668 A.2d 1113

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Jack A. WHITMYER, Appellee.**

Supreme Court of Pennsylvania.

Argued April 7, 1994.

Decided Dec. 29, 1995.

J. Michael Eakin, Alison Taylor, for Commonwealth.

Peter B. Foster, for J.A. Whitmyer.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

NIX, Chief Justice.

This is an appeal by the Commonwealth from an Order of the Superior Court which affirmed the suppression of all evidence obtained from the stop of a vehicle driven by Appellee, Jack A. Whitmyer. We granted allocatur to review the standard applied by the lower courts in addressing the legality of the automobile stop by police under the following facts.

On October 30, 1990, Trooper Thomas Kambic of the Pennsylvania State Police was traveling south on Interstate 81 in Dauphin County when he observed Appellee's vehicle proceeding in the same direction. Appellee was behind another vehicle as the two cars approached a point on the Susquehanna River Bridge where two lanes of traffic merged into a single lane. Trooper Kambic then saw Appellee drive over a solid white line and pass the vehicle in front of him before that vehicle merged into the same lane. There was no evidence, however, that Appellee operated his vehicle in a careless or reckless manner or that he interfered with any other vehicle on the road.

Trooper Kambic followed Appellee as he traveled across the bridge into Cumberland County. Utilizing his speedometer for two-tenths of a mile, Trooper Kambic estimated Appellee's speed at seventy miles per hour. Shortly thereafter, Appellee

slowed down and proceeded onto an exit ramp at the southern end of the bridge.

Trooper Kambic stopped Appellee on the exit ramp intending to cite him for driving at an unsafe speed and to "tell him about his erratic lane change." (R.R. at 14a). The trooper approached Appellee's vehicle and directed him to roll down his window. As Appellee rolled down the driver's side window, Trooper Kambic detected a strong odor of burnt marijuana. Appellee was then ordered out of the vehicle at which time the trooper conducted a pat down search of Appellee's person. Trooper Kambic discovered a film canister in Appellee's right jacket pocket which contained marijuana. The trooper also found some rolling papers and a lighter in Appellee's pocket. Appellee was taken to a nearby hospital where he underwent a urine test to determine whether marijuana was present in his system.

Appellee was charged with driving under the influence of a controlled substance,[1] unlawful possession of a small amount of marijuana,[2] unlawful possession of drug paraphernalia,[3] and failing to drive at a safe speed.[4] Appellee filed an omnibus pretrial motion which sought the suppression of all evidence obtained as a result of the stop. The trial court granted the motion and ordered all evidence suppressed. *Commonwealth v. Whitmyer*, 414 CR 1991 (C.P. Cumberland County June 17, 1991). In so holding, the court concluded that there was no probable cause to believe that Appellee was in violation of the Vehicle Code. This determination was based on the fact that Appellee did not fail to yield to any oncoming vehicle when he entered the highway nor did he pass the vehicle in front of him in a posted no passing zone. *Id.* at 4. The court additionally held that Trooper Kambic's estimate of Appellee's speed did not constitute probable cause because 75 Pa.C.S. § 3368(a)[5] requires that a vehicle's speed be timed for at least

1.  75 Pa.C.S. § 3731(a)(2).
2.  35 P.S. § 780–113(a)(31).
3.  35 P.S. 780–113(a)(32).
4.  75 Pa.C.S. § 3361.
5.  75 Pa.C.S. § 3368(a) provides:

three-tenths of mile whereas the trooper had timed Appellee for only two-tenths of a mile. *Id.* at 4–5.

On appeal, the Superior Court affirmed the order suppressing all evidence derived from the stop of Appellee's vehicle. *Commonwealth v. Whitmyer*, 415 Pa.Super. 393, 609 A.2d 809 (1992). Relying upon this Court's decisions in *Commonwealth v. Swanger*, 453 Pa. 107, 307 A.2d 875 (1973), and *Commonwealth v. Murray*, 460 Pa. 53, 331 A.2d 414 (1975), the Superior Court held that the trial court had correctly applied the law concerning when motor vehicles may be lawfully stopped. *Id.* at 397, 609 A.2d at 811. Because we likewise conclude that the stop of Appellee was unlawful, we now affirm.

In *Commonwealth v. Swanger*, 453 Pa. 107, 307 A.2d 875 (1973), this Court addressed the issue of whether a police officer could stop the driver of an automobile without having observed that driver violate any of the provisions of the Vehicle Code. We first acknowledged that the stopping of a vehicle and the detainment of its passengers constitutes a seizure and therefore implicates the Fourth Amendment. Because the Fourth Amendment protects against unreasonable searches and seizures, we relied upon the standard articulated by the United States Supreme Court in assessing the reasonableness of the seizure:

> "[I]t is necessary 'first to focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen,' for there is 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.' "

*Id.* at 111, 307 A.2d at 877 (quoting *Terry v. Ohio*, 392 U.S. 1, 20–21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905 (1968)) (further citation omitted).

(a) **Speedometers authorized.**—The rate of speed of any vehicle may be timed on any highway by a police officer using a motor vehicle equipped with a speedometer. In ascertaining the speed of a vehicle by the use of a speedometer, the speed shall be timed for a distance of not less than three-tenths of a mile.

In regard to the governmental interest, the Commonwealth in *Swanger* argued that because the automobile was a dangerous instrumentality that was responsible for numerous deaths each year, the police should have been permitted to stop vehicles without cause in order to ensure that drivers were in full compliance with the Vehicle Code. The interest on the other side was the individual's personal liberty and the right to be free from governmental intrusions. This Court concluded that given these competing interests the interest of the individual outweighed that of the government. *Commonwealth v. Swanger*, 453 Pa. at 112, 307 A.2d at 878. Thus, it was held that "before the government may single out one automobile to stop, there must be specific facts justifying this intrusion. To hold otherwise would be to give the police absolute, unreviewable discretion and authority to intrude into an individual's life for no cause whatsoever." *Id.*

Two years later, we revisited the issue of vehicle stops under the Fourth Amendment in *Commonwealth v. Murray*, 460 Pa. 53, 331 A.2d 414 (1975). In *Murray*, the police responded to a burglar alarm that had been activated inside a clothing store. When they arrived, the police noticed an individual fleeing in the shadows of the building but were unable to apprehend or identify the suspect. Approximately one hour after the initial alarm, the police observed an automobile pull into the driveway of a house near the store, stop momentarily, and then depart. The police followed the car for approximately one-half mile, during which time no traffic laws were violated nor was anything unusual observed with regard to the vehicle or its occupants. The police signaled the vehicle to stop, and the driver complied. One of the officers approached the passenger side of the vehicle and saw a hammer and a railroad spike lying on the floor behind the driver's seat. Based on these observations, a search warrant was obtained for the automobile and a subsequent search uncovered the items that had been stolen from the clothing store earlier that evening.

This Court reversed the defendant's conviction on the basis that the evidence obtained from the search of the vehicle

should have been suppressed because "the Commonwealth's power to regulate vehicular traffic within its borders did not supply an adequate justification for the intrusion upon privacy occasioned by the stop." *Id.* at 59, 331 A.2d at 417. In so holding, we reaffirmed the rule set forth in *Swanger*:

> If the alleged basis of a vehicular stop is to permit a determination whether there has been compliance with the Motor Vehicle Code of this Commonwealth, it is encumbent [sic] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code.

*Id.* at 58–59, 331 A.2d at 416–17 (citing *Commonwealth v. Swanger*, 453 Pa. 107, 115, 307 A.2d 875, 879 (1973)) (footnote omitted).

In this appeal, the Commonwealth submits that the rules set forth in *Swanger* and *Murray* were necessitated by the fact that police officers possessed virtually unlimited authority to stop motor vehicles under now-repealed 75 P.S. § 1221(b).[6] The 1983 enactment of 75 Pa.C.S. § 6308(b), the Commonwealth argues, provides the correct basis upon which a police officer's stop of a vehicle should be judged. Section 6308(b) provides:

> **Authority of police officer.**—Whenever a police officer . . . has articulable and reasonable grounds to suspect a violation of this title, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

---

**6.** 75 § 1221(b) stated as follows:

> Any peace officer, who shall be in uniform, and shall exhibit his badge or other sign of authority, shall have the right to stop any vehicle, upon request or signal, for the purpose of inspecting the said vehicle, as to its equipment and operation, or manufacturer's serial number or engine number, and securing of such other information as may be necessary.

Act of April 29, 1959, P.L. 58, § 1221 (codified as amended at 75 P.S. § 1221(b)) (repealed 1976).

According to the Commonwealth, both the trial court and the Superior Court have disregarded the above provision in favor of a heightened probable cause standard in assessing the legal justification of the stop of Appellee. We disagree and find that the law has been correctly applied in this case.

The crux of the Commonwealth's argument centers on the semantic difference between the standard articulated in *Murray*—probable cause to believe that there has been a violation of the Vehicle Code, and the language of the statute—articulable and reasonable grounds to suspect a violation of the Vehicle Code. However, when we balance the underlying interests of the individual and the government, the two standards amount to nothing more than a distinction without a difference.

The Commonwealth has an interest in enacting and enforcing rules and regulations for the safety of those who travel its highways and roads. The police should thus be permitted a sufficient degree of latitude to stop automobiles in order to meet this objective. On the other side, the privacy interest of the individual has been cogently articulated by the United States Supreme Court:

> An individual operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation. Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. Many people spend more hours each day traveling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel.

*Delaware v. Prouse*, 440 U.S. 648, 662, 99 S.Ct. 1391, 1400–1401, 59 L.Ed.2d 660, 673 (1979) (footnote omitted).

When previously faced with these two competing interests, we held "that a stop of a single vehicle is unreasonable where there is no outward sign the vehicle or the operator are in violation of The Vehicle Code.... [B]efore the government

may single out one automobile to stop, there must be specific facts justifying this intrusion." *Commonwealth v. Swanger*, 453 Pa. at 112, 307 A.2d at 878. Thus, the presence of similar facts in this case should dictate a similar result. The legislature has vested police officers with the authority to stop vehicles whenever they have "articulable and reasonable grounds to suspect a violation" of the Vehicle Code. 75 Pa.C.S. § 6308(b). Applying that standard to the instant case, it is apparent that the trial court and Superior Court were correct when they concluded that Trooper Kambic had no justifiable basis for stopping Appellee.

In reviewing the grant of a suppression motion,

a reviewing court must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole [that] remains uncontradicted. To hold otherwise would make a mockery of the suppression court and place an impossible burden on every defendant regardless of his success or failure at the suppression hearing.

*Commonwealth v. Robinson*, 518 Pa. 156, 159–60, 541 A.2d 1387, 1389 (1988). Trooper Kambic testified that he intended to cite Appellee for driving at an unsafe speed. That offense is proscribed by 75 Pa.C.S. § 3361, which provides as follows:

No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around [a] curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

Our review of the record fails to disclose any evidence that would refute the trial court's conclusion that there

was no outward sign that Appellee was driving at an unsafe speed. The trooper testified that Appellee "made an erratic lane change from the ramp onto the interstate . . . ." (R.R. at 14a). This observation clearly does not fit within the ambit of prohibited vehicle operation as defined in section 3361. Likewise, the trooper could not have relied upon his estimate of Appellee's speed as that estimate was based on a distance of only two-tenths of a mile instead of the three-tenths required by the statute. *See* note five, *supra.* As the learned trial court stated,

> the only other evidence bearing upon a possible Section 3361 violation, was the trooper's testimony that traffic at the time was medium to heavy. That conclusion is of no legal significance where [Appellee]'s speed was only estimated at fifteen miles over the speed limit on a three-lane interstate highway at a time when his vehicle was not changing lanes, traveling too close to another vehicle, or presenting a potential hazard to any other vehicle or person.

*Commonwealth v. Whitmyer,* 414 CR 1991, slip op. at 5 (C.P. Cumberland County June 17, 1991).

Based on the evidence of record, there were no articulable and reasonable grounds for Trooper Kambic to believe that Appellee was driving at an unsafe speed. We note that this is not a case where further investigation would lead to a discovery of a violation of the Vehicle Code. If the trooper was unable to clock Appellee for three-tenths of a mile or observe the conditions that would warrant a citation for driving at an unsafe speed, there is no further evidence that could be obtained from a subsequent stop and investigation. Thus, we conclude that the fruits of the unlawful stop were correctly suppressed.

Order affirmed.

PAPADAKOS, J., did not participate in the decision of this case.

MONTEMURO, J., participates by designation as a senior judge as provided by Rule of Judicial Administration 701(f).