COMMONWEALTH of Pennsylvania, Appellee,

v.

Steven Edward ULMAN, Appellant.

Superior Court of Pennsylvania.

Submitted April 17, 2006.

Filed June 19, 2006.

James R. Robinson, York, for appellant.

H. Stanley Rebert, Asst. Dist. Atty., York, for Com., appellee.

BEFORE: LALLY–GREEN, PANELLA, JJ., and McEWEN, P.J.E.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Steven Edward Ulman, appeals from the judgment of sentence entered in the Court of Common Pleas of York County, Pennsylvania on September 12, 2005. We affirm.

¶ 2 Appellant was charged with driving under the influence ("DUI")[1] following a traffic stop at approximately 2:00 a.m. on February 1, 2005. On March 23, 2005, Appellant filed a motion to suppress the evidence obtained during the traffic stop. A suppression hearing was held on July 7, 2005. At this hearing, only one witness testified, Officer David Lash.

¶ 3 Officer Lash testified that he was on duty on February 1, 2005. At approximately 2:00 a.m., Officer Lash was assisting a fellow officer with an unrelated matter on Pennsylvania Avenue near Route 30 in York County, Pennsylvania. The officers' two marked vehicles were stopped in the southbound lane of Pennsylvania Avenue with their emergency lights on. Officer Lash described the traffic conditions on Pennsylvania Avenue at that time of night to be light. Officer Lash testified that he was in the process of crossing the road when he observed a vehicle approaching at a high rate of speed. He estimated that the speed of the vehicle was approximately 60–65 mph. The speed limit at that location was 35 mph. Officer Lash further testified that the vehicle straddled

---

1. 75 Pa.C.S.A. § 3802(a)(1), (c).

the center line as it approached him. Officer Lash signaled the vehicle to stop by waving his flashlight; however, the vehicle proceeded past him. Officer Lash then entered his car and followed the vehicle. The vehicle turned onto Route 30. Officer Lash followed the vehicle for a short time and activated his emergency lights. Shortly thereafter, the vehicle stopped.

¶ 4 When Officer Lash approached the vehicle, he saw that it was driven by Appellant. It is undisputed that at the time of the traffic stop Appellant's blood alcohol content was above the legal limit. Officer Lash testified that the basis for stopping Appellant's vehicle was that he believed the vehicle was violating two provisions of the Motor Vehicle Code: driving at an unsafe speed and failing to proceed through an emergency response area with caution.

¶ 5 At the conclusion of Officer Lash's testimony, the trial judge, the Honorable John S. Kennedy, concluded that the traffic stop of Appellant's vehicle was valid. The DUI evidence was admitted for the trial. The waiver trial took place immediately after the suppression hearing concluded. Appellant was convicted of two counts of DUI. On September 12, 2005, Judge Kennedy sentenced Appellant to a term of 72 hours to six months in prison with a fine of $1,000.00. This appeal followed.[2]

¶ 6 Appellant raises the following issue for our review:

I. Whether the Honorable trial court erred in denying [Appellant's] pretrial motions in the form of a motion to suppress based on the following:

 a. The trial court erred in finding there was probable cause and/or reasonable suspicion to effectuate a motor vehicle stop of [Appellant's] vehicle;

 b. The trial court erred in determining that all of the evidence seized subsequent to the motor vehicle stop was seized legally.

Appellant's Brief at 5.

¶ 7 Initially, we note that our scope and standard of review for suppression issues is as follows:

> In evaluating the trial court's refusal to suppress evidence [we must determine] whether the factual findings of the suppression court are supported by the record. When it is a defendant who has appealed, the appellate court must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, the appellate court is bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error. Thus, if sufficient evidence is of record to support the suppression court's ruling and that court has not misapplied the law, the appellate court will not substitute our credibility determination for that of the suppression court judge.

*Commonwealth v. Marinelli,* 547 Pa. 294, 690 A.2d 203, 214 (1997).

¶ 8 Our consideration of this matter is governed by the following substantive law. The recently amended Pennsylvania Motor Vehicle Code provides that:

---

**2.** Appellant filed a timely notice of appeal on September 15, 2005. On September 19, 2005, the trial court issued an order for Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied with this order by filing a concise statement on September 21, 2005, which included the issues presently before us.

Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has **reasonable suspicion** that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b) (emphasis added) (effective February 1, 2004). The pre-amended version of Section 6308(b) provided that:

Whenever a police officer ... **has articulable and reasonable grounds to suspect** a violation of [the Motor Vehicle Code], he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b) (emphasis added) *amended by* 75 Pa.C.S.A. § 6308(b) (September 30, 2003, effective February 1, 2004).

¶ 9 Since the traffic stop that gave rise to this case occurred on February 1, 2005, the amended statute applies as it was effective February 1, 2004. Our Supreme Court has not addressed the amended version of Section 6308(b).

¶ 10 This Court did address the amended version of Section 6308(b) in *Commonwealth v. Sands*, 887 A.2d 261 (Pa.Super.2005). There, an officer with experience in observing and arresting drunk drivers observed the defendant's vehicle drifting back and forth in and out of his lane of traffic. Fearing that defendant would collide with an upcoming obstacle, the officer stopped and arrested the defendant. This Court held that the lower standard of "reasonable suspicion" in the new Section 6308(b) was not constitutionally infirm either under the Fourth Amendment of the United States Constitution or Article 1, Section 8 of the Pennsylvania Constitution, at least where the violation involved driving under the influence because public safety concerns weighed heavily when balanced against an individual's right to be left alone. *Id.* at 270–272.[3]

¶ 11 Appellant asserts that the initial stop of his vehicle was invalid and the DUI evidence should be suppressed. He cites several cases which are factually comparable to the present matter in which our Supreme Court and this Court have found traffic stops to be improper. We note, however, that all of the cases cited by Appellant were decided under the pre-amended version of Section 6308, which required a finding of probable cause as the basis for a valid stop. Since the standard is currently "reasonable suspicion," the cases cited by Appellant, while helpful, are not controlling in the present matter.

¶ 12 Appellant cites *Commonwealth v. Whitmyer*, 542 Pa. 545, 668 A.2d 1113 (1995), in support of his argument that the traffic stop was illegal. In *Whitmyer*, a

---

**3.** We also note that, in a recent case decided under the older version of Section 6308(b), our esteemed colleague, Judge Gantman, suggested that the new provision may have constitutional infirmity; however, she also recognized that such issue was not before her. *Commonwealth v. Anderson*, 889 A.2d 596, 601 (Pa.Super.2005) (Gantman, J., dissenting).

police officer stopped the defendant, after pacing the defendant's vehicle for two-tenths of a mile, for driving at an unsafe speed. The officer had estimated the defendant's speed. During the traffic stop, the officer smelled marijuana and charged the defendant with DUI, possession of marijuana, and failing to drive at a safe speed.

¶ 13 The Supreme Court held that there was no reasonable or articulable basis for the officer to suspect a violation of the Motor Vehicle Code because the officer had not paced the defendant for the required three-tenths of a mile under Section 3368(a) and the personal estimate of speed did not amount to probable cause. The Court made clear, however, that the "articulable and reasonable grounds" standard contained in the **former** Section 6308(b) was a "probable cause" standard. *Id.* at 1116.

¶ 14 Subsequently, the Legislature amended 75 Pa.C.S.A § 6308(b) to clarify that whenever an officer "has **reasonable suspicion** that a violation of [the Motor Vehicle Code] is occurring or has occurred, he may stop a vehicle[.]" 75 Pa.C.S.A. § 6308(b) (emphasis added). *Sands,* 887 A.2d at 267. The legislative history of this amendment clearly indicates that it was the Legislature's intent to authorize police officers to stop a vehicle based upon a "reasonable suspicion" that the driver has violated the Vehicle Code, rather than the heightened standard of probable cause which was applied in *Whitmyer. Id.* Since *Whitmyer* was decided under former Section 6308(b), which required a stricter standard for a traffic stop than the current version of the statute, *Whitmyer* is not controlling precedent in the present matter. *See also Sands.*

 ¶ 15 Next, we address what is to be demonstrated under a "reasonable suspicion" standard. Under this standard,

before an officer conducts an investigative detention, he or she must reasonably suspect that the individual is engaging in criminal conduct. *Commonwealth v. Rogers,* 578 Pa. 127, 849 A.2d 1185 (2004). On the other hand, "reasonable suspicion" does not require that the activity in question is unquestionably criminal before an officer may investigate further. *Id.* at 1189. Courts are to give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his or her experience. *Commonwealth v. Cook,* 558 Pa. 50, 735 A.2d 673, 676 (1999).

 ¶ 16 With this "reasonable suspicion" standard in mind, we now address the facts of Appellant's case. The record reflects that at the time of the suppression hearing, Officer Lash had over 12 years of experience as a police officer. Officer Lash testified at the suppression hearing that he and a fellow officer were stopped with their emergency lights activated along the side of the highway at approximately 2:00 a.m. The officers were dealing with a separate matter. Officer Lash stated that as he crossed the road, he observed a vehicle coming in his direction "well in excess of the posted speed limit." N.T., 7/7/05, at 13. Officer Lash estimated that the speed of the vehicle was over 25 miles per hour above the legal speed limit, traveling 60–65 mph in a 35 mph zone. Officer Lash also observed that Appellant's vehicle "continued to straddle the center line" as it approached the officers' location. *Id.* at 13, 15. Officer Lash further testified that he attempted to signal the driver of the vehicle to pull over by first waving his flashlight and subsequently shining it into the interior of the vehicle. *Id.* at 22. These efforts were ignored by Appellant, who continued to drive past Officer Lash's location. On the basis of these observations, Officer Lash believed

that Appellant was in violation of two provisions of the Motor Vehicle Code: the provision requiring drivers to operate their vehicle at a safe speed,[4] and the provision which establishes a driver's duty when proceeding through an emergency response area.[5]

¶ 17 The suppression court found Officer Lash's testimony to be credible. We refuse to substitute our credibility determination for that of the suppression court. After hearing the testimony of Officer Lash at the suppression hearing, the trial court determined that "[b]ased on the testimony, we believe that the officer did have reason to believe that the Vehicle Code violations had [taken place] and had the right to stop the vehicle." Trial Court Opinion, 11/23/05, at 2. This conclusion is supported by the record and the suppression court did not misapply the law. Officer Lash was entitled to draw reasonable inferences from the facts in light of his 12 years of experience. Based on this experience and the facts as he perceived them, he reasonably concluded that violations of the Motor Vehicle Code were being committed. Thus, he pursued and stopped Appellant's vehicle. The record supports the trial court's determination that the traffic stop was based on reasonable suspicion. Since the stop was valid, Appellant's issue is without merit.

¶ 18 Judgment of sentence affirmed.

---

4. 75 Pa.C.S.A. § 3361.

5. 75 Pa.C.S.A. § 3327 provides: **Duty of driver in emergency response areas**
 (a) GENERAL RULE. When approaching or passing an emergency response area, no person shall drive a vehicle:
 (1) at a speed greater than is reasonable and prudent under the conditions, having regard to the actual and potential hazards then existing; or
 (2) in disobedience of instructions or indications relating to traffic flow which are made, either verbally or through the use of signs, flares, signals, lights or other traffic control devices, by law or enforcement personnel or emergency service responders.