**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Galen E. FULTON, Appellant.**

**No. 296 WDA 2006.**

Superior Court of Pennsylvania.

Argued Sept. 19, 2006.
Filed April 9, 2007.

**1240**

David Flower, Somerset, for appellant.

Jerry L. Spangler, Assistant District Attorney, Somerset, for Commonwealth, appellee.

BEFORE: STEVENS, TODD, and McCAFFERY, JJ.

OPINION BY STEVENS J.:

¶ 1 Appellant Galen E. Fulton appeals an August 10, 2005 judgment of sentence entered in the Court of Common Pleas of Somerset County. This sentence stems from Fulton's apparent inability to refrain from drinking and driving. On April 25, 2004, he was arrested while driving drunk for the fifth time, and charged with driving under the influence, driving with a suspended license, and failing to drive within a single lane.[1] Fulton's blood alcohol content was nearly three times the legal limit.

¶ 2 Before trial, Fulton filed a motion to suppress, alleging, in pertinent part, that the "the Commonwealth was without probable cause sufficient to permit the stop of Defendant's vehicle...." Omnibus Pretrial Motion filed 9/8/04 at 2. A hearing was held at which time Fulton argued that the arresting trooper lacked probable cause as required by *Commonwealth v. Gleason*, 567 Pa. 111, 785 A.2d 983 (2001) and *Commonwealth v. Whitmyer*, 542 Pa. 545, 668 A.2d 1113 (1995). N.T. 10/6/04 at 14. The trial court eventually denied the motion on the grounds that the stop was supported by "the requisite cause," relying on *Commonwealth v. Mickley*, 846 A.2d 686 (Pa.Super.2004), and distinguishing *Gleason, supra.*[2] Order filed 12/9/04.

---

1. Fulton had previously been arrested for driving drunk in January of 1995, and again in June of 1995. In January of 1996, Fulton entered into the Accelerated Rehabilitative Disposition (A.R.D.) program with regard to the January 1995 arrest, and pleaded guilty to driving under the influence, second offense, with regard to the June 1995 arrest. He was sentenced on his guilty plea in February of 1996. Fulton was subsequently charged with D.U.I. for the third and fourth occasions in April and November of 2003.

2. In *Gleason*, the Supreme Court reaffirmed the holding in *Commonwealth v. Whitmyer*, 542 Pa. 545, 550, 668 A.2d 1113, 1116 (1995), that a police officer must have **probable cause** to believe that a driver has violated a provision of the Motor Vehicle Code in order to justify a traffic stop of the vehicle. *Gleason*, 567 Pa. at 122, 785 A.2d at 989 (emphasis added). The probable cause standard enunci-

ated by *Gleason* and *Whitmyer* has been superseded by 75 Pa.C.S. § 6308(b), however, which was amended on September 30, 2003, effective February 1, 2004. Section 6308(b), pertaining to "investigation by police officers, now states in pertinent part that "[w]henever a police officer ... has **reasonable suspicion** that a violation of [the Motor Vehicle Code] is occurring or has occurred" he may stop a vehicle. 75 Pa.C.S. § 6308(b) (emphasis added). *See also Martin v. Commonwealth*, 588 Pa. 429, 905 A.2d 438, 450 (2006) (Eakin, J. Concurring) ("Effective February 1, 2004, the General Assembly 'lowered the quantum of cause an officer must possess from 'articulable and reasonable grounds' [which is equivalent to probable cause] to 'reasonable suspicion" to conduct a vehicle stop."). *See also Commonwealth v. Little*, 903 A.2d 1269, 1272 (Pa.Super.2006), *Commonwealth v. Ulman*, 902 A.2d 514 (Pa.Super.2006) (noting that the *Whitmyer* standard is inapplicable in light of

¶ 3 On May 25, 2005, following a non-jury trial, Fulton was convicted of violating 75 Pa.C.S. § 3802(a)(1) and (c),[3] 75 Pa.C.S. § 1543(b)(1.1),[4] and 75 Pa.C.S. § 3309(1).[5] N.T. 5/25/05 at 35. Fulton was subse-quently ordered to pay fines and was sentenced to one to five years' imprisonment for the D.U.I. conviction, and a concurrent 90 days' imprisonment for the driving with

the change in the plain language of § 6308(b)); *Commonwealth v. Sands,* 887 A.2d 261, 271–72 (Pa.Super.2005). As the panel of this Court explained in *Ulman:*

> [T]he Legislature amended 75 Pa.C.S. § 6308(b) to clarify that whenever an officer "has **reasonable suspicion** that a violation of [the Motor Vehicle Code] is occurring or has occurred, he may stop a vehicle[.]" 75 Pa.C.S. § 6308(b) (emphasis added). *Sands,* 887 A.2d at 267. The legislative history of this amendment clearly indicates that it was the Legislature's intent to authorize police officers to stop a vehicle based upon a "reasonable suspicion" that the driver has violated the Vehicle Code, rather than the heightened standard of probable cause.

*Ulman,* 902 A.2d at 518.

Clearly, the April 25, 2004 stop of Fulton's vehicle is governed by the amended version of Section 6308, thus the arresting officer was only required to possess reasonable suspicion in order for the stop to be valid. Although Fulton urged application of the wrong standard, neither the Commonwealth nor the trial court seemed to be aware of it at the time.

3. Section 3802(a)(1) states that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S. § 3802(a)(1). Pursuant to Section 3802(c):

> An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(c).

4. Section 1543(b)(1.1) states that:

> (i) A person who has an amount of alcohol by weight in his blood that is equal to or greater than .02% at the time of testing or who at the time of testing has in his blood any amount of a Schedule I or nonprescribed Schedule II or III controlled substance, as defined in the act of April 14, 1972 (P.L.233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, or its metabolite and who drives a motor vehicle on any highway or traffic way of this Commonwealth at a time when the person's operating privilege is suspended or revoked as a condition of acceptance of Accelerated Rehabilitative Disposition for a violation of section 3802 or former section 3731 or because of a violation of section 1547(b)(1) or 3802 or former section 3731 or is suspended under section 1581 for an offense substantially similar to a violation of section 3802 or former section 3731 shall, upon a first conviction, be guilty of a summary offense and shall be sentenced to pay a fine of $ 1,000 and to undergo imprisonment for a period of not less than 90 days.
> (ii) A second violation of this paragraph shall constitute a misdemeanor of the third degree, and upon conviction thereof the person shall be sentenced to pay a fine of $2,500 and to undergo imprisonment for not less than six months.
> (iii) A third or subsequent violation of this paragraph shall constitute a misdemeanor of the first degree, and upon conviction thereof the person shall be sentenced to pay a fine of $5,000 and to undergo imprisonment for not less than two years.

75 Pa.C.S. § 1543(b)(1.1)(i)–(iii).

5. Pursuant to Section 3309(1):

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:(1) DRIVING WITHIN SINGLE LANE.—A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

75 Pa.C.S. § 3309(1).

a suspended license-D.U.I. related conviction.

¶ 4 On August 19, 2005, Fulton filed a post-sentence motion, again raising a claim that the arresting trooper lacked probable cause to stop him, and asserting that he was incorrectly sentenced as a fourth-time D.U.I. offender. Motion filed 8/19/05 at 1–3. A hearing on the motion was held on December 15, 2005,[6] and the trial court subsequently granted the motion to the extent of arresting the judgment relative to Fulton's conviction under Section 3802(c), but denied it in all other respects. Order filed 1/9/06.

¶ 5 Fulton then filed the instant appeal on February 1, 2006, and has complied with a court order to file a Pa.R.A.P. 1925(b) statement of matters complained of on appeal. He raises two matters for our determination, beginning with a challenge to the denial of his suppression motion. We review such challenges under the following well-established standard:

> When we review the ruling of a suppression court, we must ascertain whether its factual findings are supported by the record and whether the inferences and legal conclusions drawn from those facts are reasonable. *Commonwealth v. Lewis*, 535 Pa. 501, 504, 636 A.2d 619, 621 (1994). Where the defendant challenges an adverse ruling of the suppression court, we will consider only the evidence for the prosecution and whatever evidence for the defense that remains uncontradicted in context of the whole record. *Id.* If there is support on the

record, we are bound by the facts as found by the suppression court, and we may reverse that court only if the legal conclusions drawn from these facts are in error. *Id.*

*Commonwealth v. Petroll*, 558 Pa. 565, 574–575, 738 A.2d 993, 998 (1999).

¶ 6 Viewed in the above light, the evidence shows that on April 25, 2004, Pennsylvania State Police Trooper Scott Smith approached a pick up truck driven by Fulton traveling on State Route 160 in heavy fog. N.T. 10/6/04 at 5–6. Within 30 seconds of Trooper Smith's pulling behind the truck, he observed it cross the fog line twice, and the center line once, despite the presence of oncoming traffic. *Id.* at 5–6, 11. Trooper Smith activated his overhead lights and stopped the vehicle. *Id.*

¶ 7 To support his claim that Trooper Smith lacked probable cause under these circumstances, Fulton asserts that we should apply *Commonwealth v. Garcia*, 859 A.2d 820 (Pa.Super.2004) (no pinpoint cite provided by Fulton), for the proposition that where a vehicle is driven outside the lane of traffic for a moment in a minor manner, stopping the vehicle is not warranted.[7] Fulton is mistaken that *Garcia* is controlling however, as *Garcia* applied the probable cause standard enunciated in *Gleason, supra.* Despite being alerted to the amendments to Section 6308 during the hearing on his post-sentence motion, Fulton's argument is really only a continuation of his claim that the probable cause standard should apply.[8] The appellant in *Little, supra*, made a similar claim,

---

**6.** During the hearing, the parties and the trial court finally acknowledged that the reasonable suspicion standard is to be applied. N.T. 12/15/05 at 4, 6.

**7.** A portion of Fulton's argument also appears to suggest that the evidence was insufficient to support his conviction for failing to drive within a single lane because his actions did not constitute a safety hazard. Appellant's brief at 11–12. This claim goes to the sufficiency of the evidence supporting Fulton's

conviction under Section 3309(1), and is waived for purposes of appeal because it was not included in Fulton's court-ordered Rule 1925(b) statement. *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1998).

**8.** Although Fulton's Statement of Issues Presented on Appeal words his challenge to assert that there was no "reasonable suspicion/probable cause" to effectuate a valid stop, Appellant's brief at 4, the argument por-

essentially arguing that the trial court erred by applying Section 6308(b) as amended, instead of applying the previous version of the statute. *Little*, 903 A.2d at 1271. This Court disagreed, explaining that "[o]f course, such a claim must fail as courts are duty bound to apply all laws passed by the legislature pursuant to their plain language." *Id.*, 903 A.2d at 1272 *(citing Commonwealth v. LeBar*, 860 A.2d 1105, 1111 (Pa.Super.2004); 1 Pa.C.S. § 1903(a)).

▮ ¶ 8 Even if Fulton had advanced and supported an argument under the correct standard, that Trooper Smith lacked reasonable suspicion to stop him, we would find that the evidence shows otherwise. "To establish grounds for 'reasonable suspicion' ... the officer must articulate specific observations which, in conjunction with reasonable inferences derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and the person he stopped was involved in that activity." *Little*, 903 A.2d at 1272.

> In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. *In the Interest of D.M.*, 566 Pa. 445, 781 A.2d 1161, 1163 (2001). In making this determination, we must give "due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience." *[Commonwealth v. Cook*, 558 Pa. 50, 57, 735 A.2d 673, 676 (1999) ] (citation omitted). Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, "even a combination of innocent facts, when taken together, may warrant further investigation by the police officer." *Cook*, 735 A.2d at 676.

*Commonwealth v. Hughes*, 908 A.2d 924, 927 (Pa.Super.2006).[9] *See also Sands*, 887 A.2d at 272 *(citing Commonwealth v. Rogers*, 578 Pa. 127, 849 A.2d 1185, 1189 (2004)).[10]

¶ 9 Here, Trooper Smith, a policeman with more than five years' experience, saw Fulton swerve out of his lane of travel three times in a mere 30 seconds, in dense fog, on a road shared by oncoming traffic.[11] Under such circumstances, we conclude that Trooper Smith possessed reasonable suspicion that Fulton was violating a provision of the Motor Vehicle Code. Accordingly, the stop was legal and the trial court correctly denied Fulton's motion to suppress.[12]

---

tion of his brief only supports his claim that "probable cause" was lacking. *Id.* at 12.

9. In *Hughes*, police stopped the defendant after observing him swerve out of his lane of travel three times, and a panel of this Court affirmed his convictions for violation of 75 Pa.C.S §§ 3802(a)(1) and (c), and 75 Pa.C.S. § 3714, finding reasonable suspicion existed to support the stop. *Hughes*, 908 A.2d at 927–928.

10. In *Sands*, an officer with experience in observing and arresting drunk drivers observed the defendant's vehicle cross the fog line three times. *Sands*, 887 A.2d at 272. A panel of this Court found reasonable suspicion to support the defendant's convictions

for violations of 75 Pa.C.S. §§ 3802(a)(1) and (c), and 75 Pa.C.S. § 3309(1). *Id.*

11. In determining that Trooper Smith properly stopped Fulton based on these actions, we find that there was no reason for the trooper to follow Fulton for a longer period of time in order to potentially observe additional violations. In fact, in light of the presence of traffic on the road, allowing Fulton to continue would have posed a threat to other drivers.

12. We note that in denying Fulton's suppression request, the trial court relied on *Mickley, supra*, which predated the amendments to Section 6308, and found that the stop was supported by probable cause. Order filed 12/9/04. The trial court's reliance on the

¶ 10 In addition to asserting error in the denial of his suppression motion, Fulton also claims that he was erroneously sentenced as a four-time, instead of three-time, D.U.I. offender because when he pled guilty and entered the A.R.D. program following his first D.U.I. in 1995, the law stated that the guilty plea and entry into the A.R.D. program could only be used in calculating his repeat offender status for seven years. Appellant's brief at 14–16 (relying on *Commonwealth v. Godsey,* 342 Pa.Super. 24, 492 A.2d 44 (1985)). As the trial court correctly notes, this argument was addressed and disposed of by *Commonwealth v. Tustin,* 888 A.2d 843 (Pa.Super.2005), and is without merit.

¶ 11 In *Tustin,* the appellant argued that his due process rights were violated because he completed all sentences for a 1995 D.U.I. conviction, and that it was unconstitutional to apply the ten-year "look-back" period of 75 Pa.C.S. § 3806(b) of the Vehicle Code when he had already completed the seven-year "look-back" period under the now-repealed 75 Pa.C.S. § 3731(e). *Tustin,* 888 A.2d at 844–845.[13] Like Fulton, the appellant claimed that the seven-year period set forth by Section 3731(e) had ended when that Section was still in effect, and that his subsequent conviction was improperly graded, depriving him of his due process rights. *Id.* 888 A.2d at 845.

¶ 12 The *Tustin* Court noted that such an allegation was a challenge to the legality of the appellant's sentence. *Id.* 888 A.2d at 845 *(citing Commonwealth v. Sanchez,* 848 A.2d 977, 986 (Pa.Super.2004)). The Court explained that:

> When an appellant challenges the constitutionality of a statute, the appellant presents this Court with a question of law. *See Commonwealth v. Atwell,* 2001 PA Super 300, 785 A.2d 123, 125 (Pa.Super.2001) (citation omitted). Our consideration of questions of law is plenary. *See id.*[ ]at 125 (citation omitted). A statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably, and plainly violates the constitution. *See Commonwealth v. Etheredge,* 2002 PA Super 58, 794 A.2d 391, 396 (Pa.Super.2002) (citations omitted). Thus, the party challenging the constitutionality of a statute has a heavy burden of persuasion. *See id.*[ ]at 396 (citation omitted).

*Tustin,* 888 A.2d at 845 (quoting *Commonwealth v. Howe,* 842 A.2d 436, 441 (Pa.Super.2004)). The Court further noted that "[a] statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution [of the United States or this Commonwealth]; all doubts are to be resolved in favor of a finding of constitutionality." *Id.* (*citing Commonwealth v. Mayfield,* 574 Pa. 460, 466, 832 A.2d 418, 421 (2003)).

¶ 13 In upholding the trial court's application of the ten year look back, the *Tustin* court explained as follows:

> There is no constitutional violation in applying a recidivist sentencing statute against a second-time offender that had been amended after his first conviction. *Commonwealth v. Grady,* 337 Pa.Super. 174, 486 A.2d 962, 965 (Pa.Super.1984). A new statute does not violate due process if a man of common intelligence can understand its meaning. *See Mayfield, supra* at 467, 832 A.2d at 422 (citing *Commonwealth v. Heinbaugh,* 467 Pa. 1,

---

earlier version of the statute does not alter our affirmance of his decision, as we may do so on any grounds. *Commonwealth v. Van Winkle,* 880 A.2d 1280, 1285–1286 (Pa.Super.2005).

**13.** Section 3731 was repealed effective February 1, 2004.

5, 354 A.2d 244, 246 (1976)). Due process is satisfied if the statute provides reasonable standards by which a person may gauge his future conduct. *See id.* (citing *Heinbaugh, supra* at 5, 354 A.2d at 246). "The enhanced punishment imposed for [a] later offense is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes, but instead as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because [it is] a repetitive one.'" *Witte v. United States*, 515 U.S. 389, 400, 115 S.Ct. 2199, 2206, 132 L.Ed.2d 351, 364 (1995) (quoting *Gryger v. Burke*, 334 U.S. 728, 732, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948)). The consideration of an appellant's prior convictions in enhancing a sentence does not violate due process or other constitutional challenges. *See Commonwealth v. Arriaga*, 422 Pa.Super. 52, 618 A.2d 1011, 1013–14 (Pa.Super.1993) (citing *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980)) (stating recidivist statutes do not violate due process nor constitute cruel and unusual punishment).

Section 3806(b) of the Vehicle Code provides:

The calculation of prior offenses for purposes of sections 1553(d.2) (relating to occupational limited license), 3803 (relating to grading) and 3804 (relating to penalties) shall include any conviction, adjudication of delinquency, juvenile consent decree, acceptance of Accelerated Rehabilitative Disposition or other form of preliminary disposition within the ten years before the present violation occurred for any of the following:

(1) an offense under section 3802;

(2) an offense under former section 3731;

(3) an offense substantially similar to an offense under paragraph (1) or (2) in another jurisdiction; or

(4) any combination of the offenses set forth in paragraph (1), (2) or (3).

75 Pa.C.S. § 3806(b). Former Section 3731(e), which was in effect until January 31, 2004, provided in pertinent part:

Any person violating any of the provisions of this section is guilty of a misdemeanor of the second degree, except that a person convicted of a third or subsequent offense is guilty of a misdemeanor of the first degree, and the sentencing court shall order the person to pay a fine of not less than $ 300 and serve a minimum term of imprisonment of:

* * *

(ii) Not less than 30 days if the person has previously accepted Accelerated Rehabilitative Disposition or any other form of preliminary disposition, been convicted of, adjudicated delinquent or granted a consent decree under the Juvenile Act (42 Pa.C.S. § 6301 et seq.) based on an offense under this section or of an equivalent offense in this or other jurisdictions within the previous seven years.

75 Pa.C.S. § 3731(e) (1996).

Instantly, Section 3806(b), which altered the "look-back" period from seven to ten years, became effective on February 1, 2004, more than three months before Appellant was arrested for the instant D.U.I. conviction. The trial court's application of Section 3806(b) did not further punish Appellant for his 1995 offense, but created a penalty for his 2004 offense. *See Witte, supra; Grady, supra.* Therefore, Appellant had notice of this statute and its effects at the time of his 2004 arrest. *See Mayfield, supra.* The statute is clearly written and not vague, and since Appellant had notice of this amendment altering the "look-back" period, he could properly gauge his future conduct. *See id.* Contrary to Appellant's argument, due process does not

require an appellant to receive notice of when he may once again commit the same violation in the future. *Cf. Witte, supra.*

*Tustin,* 888 A.2d at 845–846.[14] *See also Commonwealth v. McCoy,* 895 A.2d 18, 34 (Pa.Super.2006) *(citing Tustin ).* Applying *Tustin* to the case at hand, we find no error in the sentence imposed upon Fulton.

¶ 14 For the foregoing reasons, we affirm the judgment of sentence.

¶ 15 Affirmed.

---

**14.** The appellant in *Tustin,* like Fulton here, cited *Godsey, supra* in support of his assertion that his sentence should be dismissed. *Tustin,* 888 A.2d at 846. The *Tustin* Court found *Godsey,* inapplicable. In *Godsey,* the appellant completed the ARD Program in 1981, at a time when offenses resolved through ARD were not considered convictions for purposes of grading future offenses. *Tustin,* 888 A.2d at 846 *(citing Godsey,* 492 A.2d at 47). The appellant was arrested for D.U.I. again in 1984. *Godsey,* 492 A.2d at 45. By that time, new legislation had been enacted stating that offenses resolved through ARD would be considered convictions for grading purposes. *Tustin,* 888 A.2d at 846–847 *(citing Godsey,* 492 A.2d at 47). The *Godsey* court held the new legislation did not apply retroactively, and determined that since the appellant entered ARD before the statute treated a criminal charge disposed by completion of ARD as a conviction, the appellant's post-ARD offense must be considered his first offense. *Tustin,* 888 A.2d at 847 *(citing Godsey,* 492 A.2d at 47). The *Tustin* court distinguished *Godsey* because Tustin did not claim that his previous D.U.I. conviction was a previously dismissed charge being treated as a conviction. The Court noted "[a]s the *Godsey* Court clearly stated, new 'look-back provisions' may properly include previous convictions. *Tustin,* 888 A.2d at 847 *(citing Godsey,* 492 A.2d at 46).

We too find *Godsey* distinguishable. Unlike the appellant therein, who entered the ARD program in 1981, when offenses resolved through ARD were not considered convictions for purposes of grading future offenses, Fulton entered the program in 1995, and makes no claim that his entry into the program should not be treated as a conviction.