## Commonwealth v. Cassatt

C.P. of Centre County, no. CP-14-CR-1300-2008.

*Yvette L. Willson,* for Commonwealth.
*Ronald S. McGlaughlin,* for defendant.

RUEST, *J.,* December 1, 2008—Presently before the court is defendant David M. Cassatt's motion to suppress filed on September 12, 2008. An amended motion to suppress was filed on November 3, 2008. Defendant claims that Patton Township Police Officer Mark Swindell did not have reasonable suspicion to stop defendant's vehicle. A hearing was held on November 3, 2008. Both parties submitted proposed findings of fact, conclusions of law and briefs. After consideration of the arguments, the court denies defendant's motion to suppress. The court determines Officer Swindell had reasonable suspicion to stop defendant's vehicle.

## FINDINGS OF FACT

(1) Defendant was charged by criminal complaint dated June 15, 2008 with one count of driving under the

influence pursuant to 75 Pa.C.S. §3802(a)(1), one count of driving under the influence pursuant to 75 Pa.C.S. §3802(a)(2), and one count of driving while operating privilege is suspended or revoked pursuant to 75 Pa.C.S. §1543(b)(1.1)(i).

(2) On June 14, defendant and his wife were at the McDonald's fast food restaurant on North Atherton Street at approximately 2:30 a.m. in the drive-through lane.

(3) As defendant was attempting to order, he was asked to wait a minute, to which defendant in a joking manner responded that the employee should hurry up.

(4) Another employee then came on the loudspeaker and told defendant that if he wanted any food, he needed to come inside and see the manager.

(5) Defendant pulled his vehicle forward to the area in front of the drive-through lane where customers wait for orders, put his car in park, left the engine running, and went into the McDonald's.

(6) The employee who apparently spoke to the defendant over the intercom system began yelling at defendant, and there was some yelling back and forth between the two individuals.

(7) At some point during the altercation, the manager, Shiv Javia, appeared and defendant spoke with him. Defendant was eventually given free food and left the restaurant. The employee who was involved in the altercation was told to leave, but was not fired.

(8) Julia Dahl, who was driving the vehicle sitting directly behind defendant's vehicle, which was parked

in the drive-through lane with its engine on, called 911 and reported a possible DUI.

(9) Ms. Dahl provided a description of the vehicle being driven by defendant and the license plate number to the 911 operator.

(10) Ms. Dahl told the 911 operator that defendant was inside the restaurant yelling at an employee.

(11) Officer Swindell did not know what was going on when he received information from dispatch (both orally and in writing on the computer).

(12) The police dispatch report indicated a possible public intoxication at McDonald's, described the type of vehicle being driven by the defendant, and indicated that the occupant of the vehicle was inside the restaurant yelling at employees.

(13) As Officer Swindell was driving to the McDonald's restaurant, he received an address on Douglas Drive that corresponded to the license plate number provided by the informant, Ms. Dahl.

(14) On his way to McDonald's, Officer Swindell observed what he believed to be a vehicle similar to the description provided by Ms. Dahl passing him on North Atherton Street traveling in the opposite direction.

(15) Officer Swindell turned his vehicle around on North Atherton Street and began following defendant's vehicle, which made a left-hand turn onto Douglas Drive.

(16) Officer McElrath was also dispatched and proceeded to the McDonald's restaurant where he spoke to

the manager, at which time the manager advised him that he did not want to proceed with any charges.

(17) Based upon all facts known to Officer Swindell, he suspected he was dealing with a potential disorderly conduct, fight, public intoxication, or DUI.

(18) Officer Swindell did not make any observations to support a suspicion that the defendant was driving under the influence.

(19) Once on Douglas Drive, Officer Swindell turned on his overhead lights in order to pull defendant over.

(20) Defendant eventually pulled into his driveway with Officer Swindell behind him, but only after Officer Swindell also put on his siren.

(21) As a result of the stop, defendant was arrested and charged with those offenses defined herein, and had a blood alcohol level of .084.

## CONCLUSIONS OF LAW

(1) An officer may stop a car if he has reasonable suspicion to suspect that a violation of the Motor Vehicle Code is occurring. 75 Pa.C.S. §6308(b); *Commonwealth v. Smith,* 917 A.2d 848 (Pa. Super. 2007); *Martin v. PennDOT,* 588 Pa. 429, 905 A.2d 438 (2006).

(2) "There is no requirement that an actual violation be established, only that there be a reasonable basis for the officer's action in stopping the vehicle." *Commonwealth v. Vincett,* 806 A.2d 31, 33 (Pa. Super. 2002).

(3) A determination of reasonable suspicion is reached by a court by looking at the totality of the cir-

cumstances and determining if there are facts to support a reasonable belief that the law is being broken. *Commonwealth v. Smith,* 917 A.2d 848 (Pa. Super. 2007); *Commonwealth v. Fulton,* 921 A.2d 1239 (Pa. Super. 2007).

(4) Circumstances giving rise to a reasonable suspicion must be viewed through the eyes of a trained officer. *Commonwealth v. Hall,* 713 A.2d 650, 653 (Pa. Super. 1998), citing *U.S. v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

(5) " 'Reasonable suspicion' does not require that the activity in question [be] unquestionably criminal before an officer may investigate further." *Commonwealth v. Ulman,* 902 A.2d 514, 518 (Pa. Super. 2006), citing *Commonwealth v. Rogers,* 578 Pa. 127, 849 A.2d 1185 (2004).

(6) "[T]he totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, 'even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.' " *Commonwealth v. Smith,* 917 A.2d 848, 851 n.4 (Pa. Super. 2007), citing *Commonwealth v. Cook,* 558 Pa. 50, 57, 735 A.2d 673, 676 (1999).

(7) There are three separate categories of interaction between police officers and citizens. The first category is a mere encounter or request for information which does not require any level of suspicion. The second category is an investigative detention that must be supported by reasonable suspicion. The third category of interaction is an arrest or custodial interrogation that must

be supported by probable cause. *Commonwealth v. Acosta,* 815 A.2d 1078, 1082 (Pa. Super. 2003).

(8) "Reasonable suspicion depends upon both the content of the information possessed by the police and its degree of reliability." *Commonwealth v. Kondash,* 808 A.2d 943, 946 (Pa. Super. 2002).

(9) "To have reasonable suspicion, police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third patties, including 'tips' from citizens. Naturally, 'if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.' " *Commonwealth v. Swartz,* 787 A.2d 1021, 1024 (Pa. Super. 2001). (citations omitted)

(10) Identified citizens who report their observations of criminal activity to police are assumed to be trustworthy, in the absence of special circumstances, since a known informant places himself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk. *Commonwealth v. George,* 878 A.2d 881 (Pa. Super. 2005).

(11) An investigatory stop is justified only if the officer in question can point to specific and articulable facts which, in conjunction with any rational inferences therefrom, lead to a suspicion that criminal activity is taking place and therefore warrants an intrusion upon the defendant. *Commonwealth v. Wiley,* 858 A.2d 1191 (Pa. Super. 2004). This standard also applies when the police stop a vehicle for investigatory purposes. The detaining officer must have reasonable suspicion that the vehicle's

occupants are presently involved in criminal activity. *Commonwealth v. Swartz,* 787 A.2d 1021, 1024 (Pa. Super. 2001).

## DISCUSSION

The defendant argues Officer Swindell did not possess sufficient grounds upon which to base a vehicle stop. Specifically, defendant argues Officer Swindell did not have reasonable suspicion that a violation of the Vehicle Code had occurred, that defendant was driving erratically, or that criminal activity was otherwise afoot.

Reasonable suspicion does not require that the activity observed be unquestionably criminal before an officer can investigate further. *Commonwealth v. Ulman,* 902 A.2d 514, 518 (Pa. Super. 2006), citing *Commonwealth v. Rogers,* 578 Pa. 127, 849 A.2d 1185 (2004). The circumstances giving rise to a reasonable suspicion must be viewed through the eyes of a trained officer. *Commonwealth v. Hall,* 713 A.2d 650, 653 (Pa. Super. 1998), citing *U.S. v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). A determination of reasonable suspicion is reached by a court by looking at the totality of the circumstances and determining if there are facts to support a reasonable belief that the law is being broken. *Commonwealth v. Smith,* 917 A.2d 848 (Pa. Super. 2007); *Commonwealth v. Fulton,* 921 A.2d 1239 (Pa. Super. 2007).

The initial report received by Officer Swindell from the 911 dispatcher indicated a "public intox," that the driver was inside the McDonald's yelling at employees, and that the car was in the drive-through lane with the

engine running and the keys inside. Officer Swindell did not know if he was responding to disorderly conduct, a fight, or a possible DUI. In responding to this unknown situation, Officer Swindell went directly to the location of this incident. En route to the location, he passed a vehicle matching the description provided by a presumed-reliable member of the public, which he followed and positively identified as the vehicle from the incident at McDonald's. Officer Swindell then conducted a traffic stop to further investigate what was going on.

Contemporaneous with this traffic stop, Officer McElrath was responding at the McDonald's. At the time he initiated the traffic stop, Officer Swindell did not yet know the outcome of Officer McElrath's investigation at McDonald's.

Defendant argues that Officer Swindell observed no driving errors that would amount to violations of the Vehicle Code or possible DUI behavior. Officer Swindell had only followed defendant's vehicle for approximately two blocks until the stop was made. Officer Swindell activated his overhead lights, but defendant did not stop his vehicle immediately upon seeing the overhead lights. Officer Swindell then activated his siren. Only then did defendant stop his vehicle, after turning into a driveway.

For the reasons stated above, based on the totality of the circumstances and the information he had, the court determines Officer Swindell had reasonable suspicion to stop defendant's vehicle. Therefore, all evidence obtained in the course of the traffic stop and DUI investigation is admissible.

174

Accordingly, the following is entered:

ORDER

And now, December 1, 2008, defendant's motion to suppress is denied.