J-S57043-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| STEPHEN STRAWN, JR., | : | |
| | : | |
| Appellant | : | No. 702 MDA 2019 |

Appeal from the Judgment of Sentence Entered November 27, 2018
in the Court of Common Pleas of Lebanon County
Criminal Division at No(s):  CP-38-CR-0001996-2017

BEFORE:  BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED JANUARY 13, 2020**

Stephen Strawn, Jr. ("Strawn"), *pro se*,[1] appeals from the judgment of sentence entered following his conviction of driving under the influence—general impairment ("DUI"), and the summary offenses of driving while license is suspended or revoked (DUI related), and driving vehicle at safe speed.[2]  We affirm.

On August 18, 2017, at about 2:19 a.m., Londonderry Township Police Officer Scott Firestone ("Officer Firestone") observed a silver Ford Focus automobile traveling westbound on Horseshoe Pike, at an unreasonable speed.  After stopping the vehicle, Officer Firestone detected that the driver,

_____

[1] The trial court conducted a hearing pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998), and appointed standby counsel to assist Strawn.

[2] ***See*** 75 Pa.C.S.A. §§ 3802(a)(1), 1543, 3361.

Strawn, had an odor of alcohol on his breath. Strawn admitted to Officer Firestone that he had consumed two shots and one beer prior to driving.

During the vehicle stop, Strawn was unable to produce identification, but provided Officer Firestone with his name and date of birth. Upon checking Strawn's information, Officer Firestone discovered that Strawn's operating privileges were suspended/expired.[3] Strawn consented to a breathalyzer test, but declined to perform a field sobriety test. Later, Strawn refused to take a blood alcohol content test.

In its April 2, 2019, Opinion, the trial court summarized the extensive procedural history underlying the instant appeal, which we adopt for the purpose of this appeal, with the following addendum. *See* Trial Court Opinion, 4/2/19, at 2-7. On April 2, 2019, the trial court denied Strawn's post-sentence Motion. Thereafter, Strawn filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Strawn does not include a statement of questions involved in his appellate brief, as is required by Pa.R.A.P. 2116. Rule 2116 provides, in relevant part, as follows:

> **General rule.** The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. The

---

[3] It was subsequently determined that Strawn's operating privileges had expired on June 30, 2001.

statement will be deemed to include every subsidiary question fairly comprised therein. **No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.** Each question shall be followed by an answer stating simply whether the court or government unit agreed, disagreed, did not answer, or did not address the question. If a qualified answer was given to the question, appellant shall indicate the nature of the qualification, or if the question was not answered or addressed and the record shows the reason for such failure, the reason shall be stated briefly in each instance without quoting the court or government unit below.

Pa.R.A.P. 2116 (emphasis added). Thus, we could deem all of Strawn's issues waived, as they are not included in a statement of questions involved. *See id.* We recognize that Strawn has chosen to proceed *pro se*. However, *pro se* status confers no special benefit upon a litigant, and any person choosing to represent himself in a legal proceeding, must assume, to a reasonable extent, his lack of expertise and legal training will be his undoing. *Commonwealth v. Adams*, 882 A.2d 496, 498 (Pa. Super. 2005). Nevertheless, to the extent that we are able to discern Strawn's claims, we decline to find waiver in this instance.

Strawn first challenges the denial of his pretrial suppression Motion. *See* Brief for Appellant at 5 (unnumbered). Strawn appears to challenge whether probable cause existed to justify the vehicle stop effectuated by Officer Firestone. *Id.* Strawn states that Officer Firestone stopped Strawn's vehicle for driving at an unsafe speed. *Id.* However, Strawn takes issue with the Commonwealth's evidence, particularly Officer Firestone's testimony that Strawn "was going faster than what I believe was the posted speed." *Id.*

(citation omitted). According to Strawn, Officer Firestone testified that Strawn was traveling at over 50 miles per hour, five miles per hour over the posted speed limit. *Id.* at 6 (unnumbered). Strawn contends that Officer Firestone did not use a testing device to determine his speed, nor did a second officer testify regarding Strawn's speed. *Id.* at 6-7 (unnumbered). Strawn claims that a second officer's testimony is necessary to establish that he exceeded the speed limit. *Id.* (unnumbered).

Our standard of review of an order denying a motion to suppress is as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Kemp*, 195 A.3d 269, 275 (Pa. Super. 2018) (citations and internal quotation marks omitted).

In its Opinion filed on June 19, 2018, the suppression court set forth an extensive analysis of the law, evaluated the totality of the circumstances

establishing probable cause to effectuate a vehicle stop, and concluded that Strawn's claim lacks merit. *See* Suppression Court Opinion, 6/19/18, at 4-17. We agree with the sound reasoning of the suppression court, as set forth in its Opinion, and affirm on this basis with regard to Strawn's first claim. *See id.*

In his second claim, Strawn challenges the sufficiency of the evidence underlying the verdict, and the verdict as against the weight of the evidence. *See* Brief for Appellant at 27 (unnumbered). Strawn first directs our attention to the Criminal Information, which did not state the speed at which Strawn was traveling. *Id.* Strawn argues that Officer Firestone failed to produce a certificate of accuracy regarding his speedometer, and directs our attention to contradictions between Officer Firestone's testimony at the preliminary hearing and his trial testimony. *Id.* at 28-29 (unnumbered). Strawn further sets forth other, purportedly contradictory testimony, and challenges Officer Firestone's credibility. *Id.* at 30 (unnumbered). Strawn also directs our attention to statutes and regulations regarding the testing of breathalyzer devices for accuracy. *Id.* at 31-33 (unnumbered). According to Strawn, "Officer Firestone has offered false testimony to all aspects of a pre-arrest breath test[.]" *Id.* at 34 (unnumbered).

In its Opinion filed on April 2, 2019, the trial court set forth the appropriate standard of review and applicable law, addressed Strawn's claim, and concluded that it lacks merit. *See* Trial Court Opinion, 4/2/19, at 9-13

(addressing the sufficiency and weight claims), 14-18 (addressing Strawn's assertions regarding the breathalyzer testing device). We agree with the sound reasoning of the trial court, and affirm on the basis of its Opinion with regard to these claims. *See id.*

Strawn next presents a series of claims under the general heading, "Abuse of Discretion." Brief for Appellant at 38 (unnumbered). As best as we are able to discern, Strawn first challenges the trial court's refusal to consider certain *pro se* pre-trial Motions, which he filed while he was represented by counsel. *See id.* at 40-41.

Our review of the record discloses that the charges were lodged against Strawn on September 25, 2017. The trial court appointed counsel for Strawn on November 11, 2017. On December 7, 2017, Strawn filed *pro se* pre-trial Motions for dismissal of the charges. On December 22, 2017, Strawn's court-appointed attorney filed counseled Omnibus Pre-Trial Motions seeking the dismissal of the charges based upon improprieties at the preliminary hearing and a violation of Pa.R.Crim.P. 571. Strawn, *pro se*, also sought *habeas corpus* and other relief. The trial court denied Strawn's *pro se* Motions, without prejudice to pursue his right to relief through a counseled motion.

A defendant has no right to hybrid representation. ***Commonwealth v. Ellis***, 626 A.2d 1137, 1139 (Pa. 1993); ***see also Commonwealth v. Ali***, 10 A.3d 282, 293 (Pa. 2010) (characterizing as a "legal nullity" a *pro se* Pa.R.A.P. 1925(b) statement filed by an appellant who was represented by counsel);

*Commonwealth v. Colson*, 490 A.2d 811, 822 (Pa. 1985) (holding that there is no constitutional right for a represented defendant to act as co-counsel). Because Strawn was represented by counsel at the time the trial court denied his *pro se* Motions, he is not entitled to relief.

Strawn again appears to contest the Commonwealth's failure to provide analysis and data regarding the accuracy of the portable breathalyzer device used by Officer Firestone. Brief for Appellant at 44 (unnumbered). As set forth above, this claim lacks merit, for the reasons set forth in the trial court's April 2, 2019, Opinion. *See* Trial Court Opinion, 4/2/19, at 14-18.

Strawn next asserts that he was denied his right to counsel during his preliminary hearing. *See* Brief for Appellant at 41. The Sixth Amendment right to the assistance of counsel attaches at the initiation of formal judicial proceedings against an individual by way of formal charge, preliminary hearing, indictment, information, or arraignment. *Commonwealth v. Briggs*, 12 A.3d 291, 324 (Pa. 2011). Once the Sixth Amendment right to counsel attaches, "the prosecutor and police have an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel." *Maine v. Moulton*, 474 U.S. 159, 171 (1985).

> The determination whether particular action by state agents violates the accused's right to the assistance of counsel must be made in light of this obligation. Thus, the Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached. However, knowing exploitation by the State

of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity. Accordingly, the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent.

*Id*. at 176. Although a defendant is entitled to counsel at the preliminary hearing, a defendant is not entitled to relief where no prejudice results from counsel's absence. *See Commonwealth v. Melnyczenko*, 358 A.2d 98, 99 (Pa. Super. 1976) (citing *Commonwealth v. Geiger*, 316 A.2d 881, 883 (Pa. 1974), and determining that an arraignment was not fatally defective where the defendant appeared *pro se* and entered a plea of not guilty, where counsel was appointed shortly after arraignment, and defendant's ability to present a defense suffered no prejudice).

Here, the preliminary hearing took place on October 26, 2017. Counsel for Strawn entered his appearance on November 11, 2017. The record reflects that counsel represented Strawn from that date until Strawn chose to proceed *pro se.* There is nothing of record demonstrating that Strawn suffered prejudice resulting from the lack of counsel at the preliminary hearing. Consequently, we cannot grant him relief on this claim. *See Melnyczenko*, 358 A.2d at 99; *Commonwealth v. Jones*, 308 A.2d 598, 602-03 (Pa. 1973) (finding that an arraignment was not fatally defective where the defendant appeared *pro se*, signed a pauper's oath, and entered a plea of not guilty

where counsel was appointed shortly after arraignment and defendant's ability to present a defense suffered no prejudice).

To the extent that Strawn raises additional claims that are unsupported by citation to the record and applicable legal authorities, we deem such claims waived. **See** Pa.R.A.P. 2119(a) (stating that each point in the argument must be "followed by such discussion and citation of authorities as are deemed pertinent"); **Commonwealth v. Johnson**, 985 A.2d 915, 924-25 (Pa. 2009) (stating that claims are waived "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review" and holding appellant's single-sentence arguments constituted "the type of cursory legal discussion which is wholly inadequate to preserve an issue for appellate review.").

In the final section of his brief, entitled "Constitutional Issues," Strawn sets forth bald allegations of constitutional violations, without citation to pertinent authorities or to the places in the record where these violations purportedly occurred.[4]  Accordingly, these claims are waived. **See** Pa.R.A.P. 2119(a); **Johnson**, 985 A.2d at 924-25.

Judgment of sentence affirmed.

_____

[4] We note that Strawn cites 75 Pa.C.S.A. § 1547(b), and cases filed by the Pennsylvania Commonwealth Court, which address the *civil* penalties for refusing a blood alcohol test.  Strawn fails to argue how these authorities are pertinent or relevant in this criminal proceeding.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothono

Date: <u>1/13/2020</u>



ENTERED & FILED
CLERK OF COURTS
LEBANON, PA

2018 JUN 19 PM 2 51

# IN THE COURT OF COMMON PLEAS LEBANON COUNTY PENNSYLVANIA

## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    : NO. CP-38-CR-1996-2017

VS                                      :

STEPHEN STRAWN                   :

## ORDER OF COURT

**AND NOW**, this 19th day of June, 2018, in accordance with the attached Opinion, the DEFENDANT's Motion to Dismiss based upon his challenge to Officer Firestone's traffic stop is DENIED. The DEFENDANT is to appear at the Criminal Call of the List scheduled for July 10, 2018 at 8:30a.m. in the designated Court Room. His trial is scheduled to commence at 8:30 a.m. on July 23, 2018 in Court Room #3. Any trial or sentencing in the above case is to be conducted before this jurist.

BY THE COURT:

_BAHCU_ J.
BRADFORD H. CHARLES

BHC/pmd

cc:    Matthew Mellon, Esquire// District Attorney's Office —Int
       Stephen Strawn// c/o LCCF, 730 E. Walnut St., Lebanon PA 17042 —Int
       Jason J. Schibinger, Esquire// PO Box 49 Lebanon PA 17042—mailed
       Court Administration (order only) —Int

PURSUANT TO Pa.R.Crim. P. 114
All parties are hereby notified
this date: 6/19/18 .
Clerk of Courts. Lebanon, PA

1

## IN THE COURT OF COMMON PLEAS LEBANON COUNTY PENNSYLVANIA

### CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : NO. CP-38-CR-1996-2017

VS :

STEPHEN STRAWN :

### APPEARANCES

Matthew Mellon, Esquire       For Commonwealth of Pennsylvania
DISTRICT ATTORNEY'S OFFICE

Stephen Strawn       *pro se*
Jason J. Schibinger, Esquire       Stand-by counsel for Stephen Strawn

### OPINION BY CHARLES, J., June 19, 2018

Can a police officer initiate a traffic stop based upon an unsubstantiated estimate of speed? The Commonwealth argues that when a police officer observed the DEFENDANT driving past his parked cruiser at a speed estimated to significantly exceed the posted limit, the officer was justified in effectuating a traffic stop. The DEFENDANT responds by stating that he was doing nothing other than "driving while black". We issue this opinion to address the viability of the traffic stop that led to DEFENDANT's arrest.

1

## I.    FACTS

The DEFENDANT is a self-represented litigant who has filed almost weekly motions to challenge the legitimacy of the charges lodged against him.   For a multitude of reasons, this Court has rejected all of the DEFENDANT's numerous arguments except one before us today.  We issue this opinion to address the DEFENDANT's challenge to the legitimacy of the traffic stop that led to his arrest.  On that issue, we conducted a Factual Hearing on May 10, 2018.  At that hearing, we learned the following facts.[1]

In the early morning of August 18, 2017, Officer Scott Firestone of the South Londonderry Township Police Department was sitting in a marked police cruiser observing traffic proceeding on US Route 322, otherwise known as the Horseshoe Pike.  Shortly after two o'clock in the morning, Officer Firestone observed a silver Ford Focus travelling at a high rate of speed past his location.  Officer Firestone pulled onto Route 322 and began to follow the Ford Focus vehicle.

Officer Firestone testified that when he pulled onto Horseshoe Pike, he was located approximately one-quarter of a mile to the east of the intersection of Route 117 and Horseshoe Pike.[2]  He also testified that he accelerated his own police cruiser to sixty (60) miles per hour and was barely able to get closer to the Ford Focus.  Officer Firestone therefore engaged his lights and siren.  After he did so, the Ford Focus proceeded to

---

[1] We prepared this Opinion without a transcript.  The facts set forth herein are based upon our notes and recollection.
[2] We are familiar with this intersection.  To the west, route 322 enters the village of Campbelltown where houses and businesses are located on both sides of the roadway.  To the north, Rt. 117 enters a residential area.

2

turn right onto Route 117 at a speed far greater than was appropriate for such a turn. During the turn, the Focus proceeded into the oncoming lane of traffic on Route 117 before returning to the correct lane of travel. After Officer Firestone turned his police cruiser onto Route 117, the Ford Focus did eventually pull to the side of the road.

In the ensuing encounter, Officer Firestone learned that the DEFENDANT was the driver of the Focus vehicle. Officer Firestone learned that the DEFENDANT did not possess a valid Pennsylvania Driver's License. In addition, Officer Firestone detected evidence that the DEFENDANT had been consuming alcohol. He therefore asked the DEFENDANT to perform field sobriety tests. The DEFENDANT refused. He also transported the DEFENDANT to a hospital for a blood test. The DEFENDANT refused to provide a sample of his blood.

Officer Firestone filed charges for Driving Under the Influence of Alcohol, Driving while Operating Privileges are Suspended or Revoked-DUI related and several other Summary Offenses. The DEFENDANT was appointed counsel. He subsequently "fired" his attorney. We conducted a Grazier Hearing on February 7, 2018. As a result of that hearing, we permitted the DEFENDANT to represent himself and we appointed Attorney Elliott R. Katz to serve as stand-by counsel. Following the Pre-Trial Hearing that occurred on May 8, 2018, we solicited legal briefs from both parties. We have now received those briefs and we issue this opinion to

3

address the DEFENDANT's challenge of the traffic stop conducted by Officer Firestone.

## II.   DISCUSSION

### A.   General Precepts

In order to stop a motorist, a police officer must have "articulable and reasonable grounds" or "probable cause" to suspect a violation of Pennsylvania's Motor Vehicle Code.   This precise standard to analyze traffic stops has been in a state of flux since the decision of Pennsylvania's Supreme Court in *Commonwealth v. Whitmyer*, 668 A.2d 1113 (Pa. 1995). In *Whitmyer*, Pennsylvania's Supreme Court had declared that probable cause was necessary for a police officer to conduct a traffic stop.   Following *Whitmyer*, Pennsylvania's Legislature enacted a statute 75 Pa. C.S.A. §6308, that authorized traffic stops whenever police possess "articulable and reasonable grounds" to suspect a violation of the Vehicle Code.   Since the enactment of § 6308, Courts have employed both the "probable cause" standard and the "reasonable ground" standard often interchangeably.

In *Commonwealth v. Chase*, 960 A.2d 108 (Pa. 2008), the Supreme Court affirmed the constitutionality of 75 Pa. C.S.A. § 6308.   However, the Court in *Chase* declared that § 6308 applies only to "investigatory stops" where there is a need for the motorist to stop so that police can secure additional information necessary to enforce the Vehicle Code.   *Chase* made it clear that § 6308 "does not allow all stops to be based on the lower

4

quantum – it merely allows this for investigatory stops, consistent with the requirements of both the Federal and State constitutions." **Id** at page 116.

Where a vehicle stop is effectuated due to a violation of the Motor Vehicle Code that does not require additional investigation, it must be supported by probable cause. *Commonwealth v. Feczko*, 10 A.3d 1285 (Pa. Super. 2010). In the case of a traffic stop for speeding, Pennsylvania's Superior Court has declared that "probable cause" is the proper standard. *Commonwealth v. Salter*, 121 a.3d 987 (Pa. Super. 2015). This is because "When a vehicle is stopped, nothing more can be determined as to the speed of the vehicle when it was observed while traveling on a highway." **Id** at page 993.

In determining whether probable cause exists, "there is no requirement that an actual violation be established". *Commonwealth v. Vincett*, 806 A.2d 31 (Pa. Super. 2002). Probable cause has been defined as existing "where the facts and circumstances within the knowledge of the officer are based upon reasonably trustworthy information and are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Joseph*, 34 A.3d 855, 863 (Pa. Super. 2011); *Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009). "It is the facts and circumstances within the personal knowledge of the police officer that frames the determination of the existence of probable cause." *Commonwealth v. Galendez*, 23 A.3d 1042, 1046 (Pa. Super. 2011). Ascertaining probable cause requires an analysis

5

of the totality of circumstances known to the police officer. *Galendez*, supra.

In this case, Officer Firestone engaged his lights and siren because he believed the DEFENDANT was driving too fast for existing conditions. After Officer Firestone engaged his lights and siren, the DEFENDANT was seen making an improper and dangerous right-hand turn. The question before this Court today is whether either of the observations by Officer Firestone provided him with probable cause to effectuate a traffic stop. In deciding this issue, we will address both the speeding and the improper right-hand turn.

(a) Speeding

The DEFENDANT claims that a traffic stop cannot be predicated solely upon a police officer's opinion of a vehicle's speed. In support of this position, the DEFENDANT relies primarily upon the Pennsylvania Supreme Court decision of *Commonwealth v. Whitmyer*, 668 A.2d 1113 (Pa. 1995). In *Whitmyer*, a Pennsylvania State Police Trooper opined that the Defendant was traveling roughly 15 miles per hour in excess of the posted speed limit. He based his opinion upon his years of experience as a State Police Trooper and his own police cruiser's speedometer. However, the trooper followed the Defendant for only two-tenths of a mile. The Supreme Court held that the trooper's traffic stop was not supported by probable cause. Emphasizing that a Pennsylvania statute authorizes use

6

of a speedometer as a speed-timing device only when the speed is measured for three-tenths of a mile or more, the Supreme Court stated:

> "If the trooper was unable to clock Appellee for three-tenths of a mile or observe the conditions that would warrant a citation for driving at an unsafe speed, there is no further evidence that could be obtained from a subsequent stop and investigation. Thus, we conclude that the fruits of the unlawful stop were correctly suppressed." **Id** at page 1118.

As can be imagined, **Whitmyer** spawned a multitude of different challenges to traffic stops across the Commonwealth of Pennsylvania. As noted above, **Whitmyer** also prompted the Pennsylvania Legislature to enact a statute to ameliorate the practical problems for police that **Whitmyer** engendered. Ultimately, more recent Appellate Court decisions have tended to interpret **Whitmyer** narrowly.

According to the Westlaw search engine, eighty-four (84) Appellate cases have cited **Whitmyer** since 1995. Not all of these cases involved a traffic stop for speeding. However, several did. Without promising to be comprehensive, we will endeavor to highlight the key cases decided since **Whitmyer** where a Defendant challenged a traffic stop based upon an officer's opinion regarding the speed of a motor vehicle:

(1) ***Commonwealth v. Butler***, 856 A.2d 131 (Pa. Super. 2004)

In ***Butler***, Philadelphia police officers observed the Defendant's vehicle traveling at 50 to 60 miles per hour in a posted 25 mile per hour zone. The Defendant also weaved in and out of traffic and even traversed onto the concrete median.

Citing the fact that the Defendant was driving down a populated street in a city, the Superior Court stated that police had "more than sufficient probable cause that Butler had violated the Vehicle Code. The initial stop was therefore justified." **Id** at page 135.[3]

(2) *Commonwealth v. Fredericks*, 2015 WL 7722041 (Pa. Super. 2015)[4]

In this case, a police trooper utilized a radar gun to measure the speed of Defendant's vehicle at 82 miles per hour in a 65 mile per hour zone. The officer decided to afford the Defendant with "a break" by not citing him for speeding. Because the Defendant was not charged with speeding, the trooper did not verify the certificate of accuracy for his radar gun. Because of this, the Defendant argued that his traffic stop should be suppressed. The Superior Court disagreed and stated:

> "We hold Trooper Zaykowski had probable cause to stop Appellant for speeding, even though the Commonwealth could not produce at trial documentation showing that the radar gun used was an approved, properly calibrated speed-testing device. Trooper Zaykowski did not need to have sufficient evidence to convict Appellant of speeding when he stopped him. Rather, he needed only probable cause. He met that standard here. His radar gun timed Appellant's speed at 82 mph in a 65 mph zone – almost

---

[3] Interestingly, some of the evidence used by the police to determine probable cause occurred after the police officer had activated her lights and sirens. Thus, post-activation driving was deemed to be relevant to the issue of probable cause.

[4] Fredericks is a Memorandum Opinion. It is therefore not binding precedent. We cite it only as persuasive authority.

8

20 mph over the speed limit. True, the Commonwealth lacked documentation showing the radar gun's accuracy, because Trooper Zaykowski did not record which unit he used. Such documentation, however, is not necessary to establish probable cause.'...Importantly, the actual accuracy of the radar gun is the wrong inquiry in determining probable cause. Rather, the proper inquiry is whether Trooper Zaykowski reasonably believed it was accurate.' The suppression inquiry is analyzed from the perspective of the officer, and there is no requirement that an actual Vehicle Code Violation be established, only that there be a reasonable basis for the officer's action in stopping the vehicle." **Commonwealth v. Vincett**, 806 A.2d 31, 33 (Pa. Super. 2002)."

(3) **Commonwealth v. Heberling**, 6787 A.2d 794 (Pa. Super. 1996)

Police observed a vehicle traveling "at an extreme rate of speed" in a 45 mile per hour zone while he was one-tenth of a mile from an intersection and two- to three-tenths of a mile in front of the crest of a hill. The Defendant was stopped before reaching either of these points. Weather conditions were clear. No other traffic was affected, nor were any pedestrians put at risk. Under these circumstances – which are very close to the ones at bar – the Superior Court affirmed the traffic stop and stated:

"There is no question that speeding alone does not constitute a violation of this statute (driving at an unsafe speed). There must be proof of speed that is unreasonable or imprudent under the circumstances (of which there must also be proof), which are the "conditions" and "actual and potential hazards then existing" of the roadway. These circumstances may include not only the amount of traffic, pedestrian travel and weather conditions, but also the nature of the roadway itself (e.g., whether 4-lane interstate, or rural; flat and

9

wide, or narrow and winding over hilly terrains; smooth surface or full of potholes; clear or under construction with abrupt lane shifts.) It is circumstances under which one's speed may be found sufficiently unreasonable and imprudent to constitute a violation of § 3361, even if the driver has adhered to the posted speed limit....

Approaching a hillcrest and approaching an intersection are "conditions" specifically enumerated in the statute that require a driver to proceed at a safe and appropriate speed. When Appellant drove at an excessive speed under these conditions, she violated § 3361." **Id** at pages 795-796; 797.

(4) ***Commonwealth v. Judy***, 2016 WL 6820539 (Pa. Super. 2016)[5]

In this case, a Pennsylvania State Police Trooper followed the Defendant's vehicle on US Route 30 for a quarter of a mile. Using a calibrated speedometer in his police cruiser, the trooper indicated that the Defendant was traveling 60 miles per hour in a 40 mile per hour zone. There were no other vehicles on the roadway. At no time did the vehicle leave its proper lane of travel. The Suppression Court held that the officer's estimate of speed over one-quarter of a mile, did not rise to the level of probable cause necessary to support a traffic stop. Based upon ***Whitmyer***, a panel of the Superior Court affirmed the Trial Court's decision and declared the officer's use of a speedometer to measure the Defendant's speed over a distance

---

[5] Like ***Fredericks***, ***Judy*** was a Memorandum Opinion and is being cited a persuasive, as opposed to binding, precedent.

10

of less than three-tenths of a mile to be insufficient to create probable cause.

(5) ***Commonwealth v. Little***, 903 A.2d 1269 (Pa. Super. 2006)

In ***Little***, the police observed a Defendant approaching the crest of a hill which obscured vision of an intersection on the other side of the crest. The officer described the Defendant's vehicle as accelerating "to its fullest capability." The officer estimated that the Defendant's vehicle was traveling 40-45 miles per hour in a 35 mile per hour zone. Relying upon ***Whitmyer***, the Defendant challenged the traffic stop. The Superior Court rejected the Defendant's challenge and stated that the officer's testimony was sufficient to establish reasonable grounds for the belief that the Defendant violated the Motor Vehicle Code.

(6) ***Commonwealth v. Minnich***, 874 A.2d 1244 (Pa. Super. 2005)

The police officer in ***Minnich*** observed the Defendant drive around a curve and over a hill "at a very high rate of speed" on an icy roadway. Emphasizing that the Defendant was not only speeding, but was also proceeding around a blind curve, the Superior Court concluded:

> "The question remains, then, whether the act of speeding, at the approach to an intersection, when the speed is

11

estimated by the observing officer, with no other traffic in the area, when the officer observes "a lot of dust and cinders" blowing up from the icy roadway as the vehicle comes around a sharp curve as it crests a hill, establishes a violation of the Driving-Vehicle-at-Safe-Speed statute. We have carefully reviewed the record and conclude that the Suppression Court's factual findings of the surrounding circumstances are sufficient for the trier of fact to have concluded beyond a reasonable doubt that Appellant was operating his vehicle at an unsafe speed. Accordingly, we conclude that the stop of Appellant's vehicle was lawful..." **Id** at page 1238.

(7) *Commonwealth v. Parrish*, 2016 WL4849251 (Pa. Super. 2016)[6]

In *Parrish*, a police officer was parked along a roadway with a 35 mile per hour speed limit. The officer observed a vehicle traveling "at a high rate of speed". Based upon his experience, the officer estimated that the vehicle was traveling about 65 miles per hour. In affirming the validity of the traffic stop, the Superior court chastised the Defendant for conflating probable cause with proof beyond a reasonable doubt. The Court stated:

"Establishing approved speed timing methods, § 3368 only speaks to the evidence necessary for a conviction. Appellant would have us replace the current probabilistic standard required for traffic stops with one hitherto confined to formal adjudicatory proceedings. Adopting such a position would graft an impossible burden into the law: The need to have enough evidence before a conviction before pulling a vehicle over.... In this case,

---

[6] *Parrish* is also a Memorandum Opinion. It is not therefore binding precedent. We cite it only as persuasive authority.

12

> Officer Carpenter was patrolling a stretch of highway with which he was well familiar. Carpenter knew the posted speed limit and the usual pace of traffic along Hellam Street. After observing Appellant's vehicle, Carpenter's experience with traffic enforcement enabled his to estimate Appellant's speed as being nearly doubled the posted speed limit."

Based upon this reasoning, the Court determined that the officer's estimate of the Defendant's speed was sufficient to create probable cause.

(8) *Commonwealth v. Perry*, 982 A.2d 1009 (Pa. Super. 2009)

*Perry* was a case emanating from Lebanon County where this jurist denied a Defendant's Suppression Motion. In *Perry*, an Annville Township Police Officer observed a vehicle stopped at the intersection of US Route 422 and Route 934. When the light turned to green, the vehicle "took off at a high rate of speed". To investigate, the officer had to speed his cruiser to 40 miles per hour in a 25 mile per hour zone. The Defendant challenged the subsequent traffic stopped based upon *Whitmyer*. The Superior Court rejected this challenge and stated:

> "Instantly, Appellant drove 15 miles per hour faster than the posted speed limit of 25 miles per hour on a road that was wet and slushy. Because *Minnich* established that potential danger is sufficient to satisfy the probable cause standard, we discern no legal error in concluding that the instant facts are sufficient to meet the lower standard of reasonable suspicion...In conclusion, we hold that *Minnich*, which established that speeding may create sufficient potential for causing an accident under certain

circumstances to warrant a finding of probable cause, also applies to the current standard of reasonable suspicion. Accordingly, the Suppression Court did not err in concluding Officer Robinson had reasonable suspicion to stop Appellant." **Id** at page 1012-1013.

(9) *Commonwealth v. Ulman*, 902 A.2d 514 (Pa. Super. 2006)

Police officers were stopped along Route 30 in York at approximately 2am when they observed a Defendant traveling at a "high rate of speed". The officers estimated that the speed was approximately 60-65 miles per hour in a 35 mile per hour zone. The Superior Court rejected the Defendant's Suppression Motion, stating that the officer "was entitled to draw reasonable inferences from the facts in light of his twelve years of experience. Based on this experience and the facts as he perceived them, [the officer] reasonable concluded that violations of the Motor Vehicle Code were being committed." **Id** at page 518.

(10) *Commonwealth v. Wilbert*, 858 A.2d 1247 (Pa. Super. 2004)

In this case, a police officer witnessed the Defendant traveling from the opposite direction and traveling toward her cruiser at a speed of roughly 60 miles per hour in a 45 mile per hour zone. The officer also noticed a nauseating odor coming from the vehicle. She therefore turned around and began following the vehicle. During this period of time, the Defendant crossed the center line and the fog line of the roadway on

14

numerous occasions. Citing *Whitmyer*, the Defendant challenged the viability of the traffic stop. The Superior Court rejected the challenge. Based upon a totality of information presented, the Court held that the traffic stop was appropriate.

As is evident from the decisional precedent outlined above, every case involving an officer's estimate of speed is different. Each must be evaluated based upon the unique factual circumstances apparent to the police officer when he effectuated the traffic stop. In this case, Officer Firestone was aware of the following:

- That it was 2 a.m. and that traffic on US Route 322 was light;

- That US Route 322 is one of the most heavily traveled roadways in Lebanon County. Even at 2 a.m., vehicles could be expected to travel on Route 322.

- That the posted speed limit at Route 322 where Officer Firestone was parked was 45 miles per hour;

- That Officer Firestone perceived that the DEFENDANT's vehicle was traveling significantly in excess of the posted speed limit as it passed the officer's location;

- That the intersection of Route 322 and Route 117 is located approximately one-quarter of a mile to the west of where Officer Firestone was located. The DEFENDANT's vehicle was traveling toward this intersection.

15

- That the town of Campbelltown is located immediately on the other side of the intersection of Route 322 and Route 117. This town is comprised of closely-spaced residences, churches and businesses. The speed limit in Campbelltown is lower than the speed limit where the officer first observed the DEFENDANT's vehicle.[7]

- That a residential housing development is situated to the north of the intersection of Route 117 and Route 322 on Route 117.[7]

- That any motorist traveling at the speed observed of the DEFENDANT's vehicle would create a traffic hazard at the intersection of Route 322 and Route 117, or traveling along either Route 322 or Route 117 on the other side of the intersection.

- When Officer Firestone pulled onto Route 322 in order to follow the DEFENDANT's vehicle, he had to accelerate quickly to reach 60 miles per hour and did not appreciably catch up to the DEFENDANT.

- Based upon his experience, Officer Firestone estimated the DEFENDANT was speeding at least 15 miles per hour in excess of the posted speed limit.

It is the opinion of this Court that Officer Firestone had probable cause to effectuate a traffic stop of the DEFENDANT's vehicle. While only one or two factors outlined above may not establish probable cause, the

---

[7] We do not recall specific testimony at the Suppression Hearing regarding the existence of Campbelltown and the layout of the roadways at or near the intersection of Route 322 and Route 117. However, we know that the intersection is located in Officer Firestone's jurisdiction and he is familiar with the area. This Court is also familiar with the area and we have taken judicial notice of the configuration of the roadways and surrounding buildings.

16

totality of all of the above clearly establishes that Officer Firestone was justified in stopping the DEFENDANT.

(b) Improper Right-Hand Turn

We accept as self-evident that Officer Firestone could conduct a traffic stop of any motorist who performed a right-hand turn similar to the one the DEFENDANT attempted from US Route 322 onto Route 117. Whenever a motorist tries to accomplish a turn at an excessive rate of speed and drifts into the oncoming lane of travel as a result, that motorist has violated Pennsylvania's Motor Vehicle Code. Section 3331 of the Code states that "The driver of a vehicle intending to turn right shall approach the turn and make the turn as close as practicable to the right-hand curb or edge of the roadway." 75 Pa.C.S.A. § 3331. Clearly, the DEFENDANT's turn from Route 322 onto Route 117 did not comport with this standard.

The problem in this case is that Officer Firestone had already engaged his lights and siren when he observed the DEFENDANT's improper turn. The DEFENDANT now claims that his improper turn is immaterial to the question of whether police could effectuate a lawful traffic stop. The DEFENDANT argues that anything he did after Officer Firestone engaged his lights and siren is irrelevant to the lawfulness of the ultimate traffic stop.

It is true that a traffic stop officially "occurs" when a police officer activates lights and siren. *Commonwealth v. Livingstone*, 174 A.3d 609 (Pa. 2017). However, this precept does not automatically lead to the

17

conclusion that everything that occurs thereafter should be deemed irrelevant. To the contrary, police cannot and should not ignore the Defendant's driving violations after lights and siren are activated. In the opinion of this Court, unsafe driving is unsafe, regardless of whether it occurs before or after a police officer engages his lights and siren.

In *Commonwealth v. Scattone*, 672 A.2d 345 (Pa. Super. 1996), a police officer engaged his lights and siren to stop a vehicle based upon information he received from a witness. After the lights and siren were activated, the Defendant led police on a three (3) mile chase and committed numerous traffic violations in the process. The Defendant defended against his violations by claiming that police did not have probable cause to effectuate an initial stop. He attempted to characterize probable cause as a "condition precedent to validating police pursuit and a citizen's violating of § 3733(a) for fleeing and attempting to allude police." **Id** at page 346. Pennsylvania's Superior Court rejected the Defendant's position. The Superior Court noted that citizens are not permitted to raise unlawfulness of the arrest as a defense to a resisting arrest charge. In part because of this, the Court concluded "A citizen is not permitted to avoid a violation of §3733(a) under the cloak of a no probable cause or articulable suspicion to believe criminal activity is afoot by police."

In the opinion of this Court, the DEFENDANT's improper right turn onto Route 117 provided separate and independent justification for Officer Firestone's traffic stop. The mere fact that the improper right turn occurred

18

after Officer Firestone had engaged his lights and siren does not afford the DEFENDANT with a defense to a charge of violating the Motor Vehicle Code, nor does it erase the existence of probable cause based upon Officer Firestone's observation of the improper turn. For this reason also, we believe that Officer Firestone's traffic stop of the DEFENDANT was proper.

## III.    CONCLUSION

There is absolutely no evidence whatsoever that race played a role in Officer Firestone's traffic stop of the DEFENDANT.[8] However, Officer Firestone did immediately perceive that the DEFENDANT's vehicle was traveling too fast and his perception was confirmed when he could not catch the DEFENDANT's vehicle despite accelerating in own to 60 miles per hour. If the DEFENDANT's speeding were not enough, Officer Firestone then observed the DEFENDANT make a dangerous right-hand turn that would have caused an accident had another vehicle been located on Route 117. All of the above justified Officer Firestone's traffic stop. Therefore, the events that occurred thereafter should not be suppressed. An Order to effectuate these decisions will be entered today's date.

---

[8] Indeed, given that the DEFENDANT's vehicle traveled past Officer Firestone's position in the middle of the night at an area of the highway that was unlit and at a high rate of speed, we conclude that it was unlikely that Officer Firestone even realized the race of the driver of the speeding vehicle.

ENTERED & FILED
CLERK OF COURTS
LEBANON, PA

2018 JUN 19 PM 2 52

# IN THE COURT OF COMMON PLEAS LEBANON COUNTY PENNSYLVANIA

## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     : NO. CP-38-CR-1996-2017

VS                          :

STEPHEN STRAWN                  :

## APPEARANCES

Matthew Mellon, Esquire        For Commonwealth of Pennsylvania
DISTRICT ATTORNEY'S OFFICE

Stephen Strawn                     *pro se*
Jason J. Schibinger, Esquire      Stand-by counsel for Stephen Strawn

## OPINION BY CHARLES, J., June 19, 2018

Can a police officer initiate a traffic stop based upon an unsubstantiated estimate of speed? The Commonwealth argues that when a police officer observed the DEFENDANT driving past his parked cruiser at a speed estimated to significantly exceed the posted limit, the officer was justified in effectuating a traffic stop. The DEFENDANT responds by stating that he was doing nothing other than "driving while black". We issue this opinion to address the viability of the traffic stop that led to DEFENDANT's arrest.

1

## I. FACTS

The DEFENDANT is a self-represented litigant who has filed almost weekly motions to challenge the legitimacy of the charges lodged against him. For a multitude of reasons, this Court has rejected all of the DEFENDANT's numerous arguments except one before us today. We issue this opinion to address the DEFENDANT's challenge to the legitimacy of the traffic stop that led to his arrest. On that issue, we conducted a Factual Hearing on May 10, 2018. At that hearing, we learned the following facts.[1]

In the early morning of August 18, 2017, Officer Scott Firestone of the South Londonderry Township Police Department was sitting in a marked police cruiser observing traffic proceeding on US Route 322, otherwise known as the Horseshoe Pike. Shortly after two o'clock in the morning, Officer Firestone observed a silver Ford Focus travelling at a high rate of speed past his location. Officer Firestone pulled onto Route 322 and began to follow the Ford Focus vehicle.

Officer Firestone testified that when he pulled onto Horseshoe Pike, he was located approximately one-quarter of a mile to the east of the intersection of Route 117 and Horseshoe Pike.[2] He also testified that he accelerated his own police cruiser to sixty (60) miles per hour and was barely able to get closer to the Ford Focus. Officer Firestone therefore engaged his lights and siren. After he did so, the Ford Focus proceeded to

---

[1] We prepared this Opinion without a transcript. The facts set forth herein are based upon our notes and recollection.
[2] We are familiar with this intersection. To the west, route 322 enters the village of Campbelltown where houses and businesses are located on both sides of the roadway. To the north, Rt. 117 enters a residential area.

turn right onto Route 117 at a speed far greater than was appropriate for such a turn. During the turn, the Focus proceeded into the oncoming lane of traffic on Route 117 before returning to the correct lane of travel. After Officer Firestone turned his police cruiser onto Route 117, the Ford Focus did eventually pull to the side of the road.

In the ensuing encounter, Officer Firestone learned that the DEFENDANT was the driver of the Focus vehicle. Officer Firestone learned that the DEFENDANT did not possess a valid Pennsylvania Driver's License. In addition, Officer Firestone detected evidence that the DEFENDANT had been consuming alcohol. He therefore asked the DEFENDANT to perform field sobriety tests. The DEFENDANT refused. He also transported the DEFENDANT to a hospital for a blood test. The DEFENDANT refused to provide a sample of his blood.

Officer Firestone filed charges for Driving Under the Influence of Alcohol, Driving while Operating Privileges are Suspended or Revoked-DUI related and several other Summary Offenses. The DEFENDANT was appointed counsel. He subsequently "fired" his attorney. We conducted a Grazier Hearing on February 7, 2018. As a result of that hearing, we permitted the DEFENDANT to represent himself and we appointed Attorney Elliott R. Katz to serve as stand-by counsel. Following the Pre-Trial Hearing that occurred on May 8, 2018, we solicited legal briefs from both parties. We have now received those briefs and we issue this opinion to

3

address the DEFENDANT's challenge of the traffic stop conducted by Officer Firestone.

## II. DISCUSSION

### A. General Precepts

In order to stop a motorist, a police officer must have "articulable and reasonable grounds" or "probable cause" to suspect a violation of Pennsylvania's Motor Vehicle Code. This precise standard to analyze traffic stops has been in a state of flux since the decision of Pennsylvania's Supreme Court in *Commonwealth v. Whitmyer*, 668 A.2d 1113 (Pa. 1995). In *Whitmyer*, Pennsylvania's Supreme Court had declared that probable cause was necessary for a police officer to conduct a traffic stop. Following *Whitmyer*, Pennsylvania's Legislature enacted a statute 75 Pa. C.S.A. §6308, that authorized traffic stops whenever police possess "articulable and reasonable grounds" to suspect a violation of the Vehicle Code. Since the enactment of § 6308, Courts have employed both the "probable cause" standard and the "reasonable ground" standard often interchangeably.

In *Commonwealth v. Chase*, 960 A.2d 108 (Pa. 2008), the Supreme Court affirmed the constitutionality of 75 Pa. C.S.A. § 6308. However, the Court in *Chase* declared that § 6308 applies only to "investigatory stops" where there is a need for the motorist to stop so that police can secure additional information necessary to enforce the Vehicle Code. *Chase* made it clear that § 6308 "does not allow all stops to be based on the lower

4

quantum – it merely allows this for investigatory stops, consistent with the requirements of both the Federal and State constitutions." **Id** at page 116.

Where a vehicle stop is effectuated due to a violation of the Motor Vehicle Code that does not require additional investigation, it must be supported by probable cause. *Commonwealth v. Feczko*, 10 A.3d 1285 (Pa. Super. 2010). In the case of a traffic stop for speeding, Pennsylvania's Superior Court has declared that "probable cause" is the proper standard. *Commonwealth v. Salter*, 121 a.3d 987 (Pa. Super. 2015). This is because "When a vehicle is stopped, nothing more can be determined as to the speed of the vehicle when it was observed while traveling on a highway." **Id** at page 993.

In determining whether probable cause exists, "there is no requirement that an actual violation be established". *Commonwealth v. Vincett*, 806 A.2d 31 (Pa. Super. 2002). Probable cause has been defined as existing "where the facts and circumstances within the knowledge of the officer are based upon reasonably trustworthy information and are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Joseph*, 34 A.3d 855, 863 (Pa. Super. 2011); *Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009). "It is the facts and circumstances within the personal knowledge of the police officer that frames the determination of the existence of probable cause." *Commonwealth v. Galendez*, 23 A.3d 1042, 1046 (Pa. Super. 2011). Ascertaining probable cause requires an analysis

5

of the totality of circumstances known to the police officer. **Galendez**, supra.

In this case, Officer Firestone engaged his lights and siren because he believed the DEFENDANT was driving too fast for existing conditions. After Officer Firestone engaged his lights and siren, the DEFENDANT was seen making an improper and dangerous right-hand turn. The question before this Court today is whether either of the observations by Officer Firestone provided him with probable cause to effectuate a traffic stop. In deciding this issue, we will address both the speeding and the improper right-hand turn.

(a) Speeding

The DEFENDANT claims that a traffic stop cannot be predicated solely upon a police officer's opinion of a vehicle's speed. In support of this position, the DEFENDANT relies primarily upon the Pennsylvania Supreme Court decision of **Commonwealth v. Whitmyer**, 668 A.2d 1113 (Pa. 1995). In **Whitmyer**, a Pennsylvania State Police Trooper opined that the Defendant was traveling roughly 15 miles per hour in excess of the posted speed limit. He based his opinion upon his years of experience as a State Police Trooper and his own police cruiser's speedometer. However, the trooper followed the Defendant for only two-tenths of a mile. The Supreme Court held that the trooper's traffic stop was not supported by probable cause. Emphasizing that a Pennsylvania statute authorizes use

6

of a speedometer as a speed-timing device only when the speed is measured for three-tenths of a mile or more, the Supreme Court stated:

> "If the trooper was unable to clock Appellee for three-tenths of a mile or observe the conditions that would warrant a citation for driving at an unsafe speed, there is no further evidence that could be obtained from a subsequent stop and investigation. Thus, we conclude that the fruits of the unlawful stop were correctly suppressed." **Id** at page 1118.

As can be imagined, *Whitmyer* spawned a multitude of different challenges to traffic stops across the Commonwealth of Pennsylvania. As noted above, *Whitmyer* also prompted the Pennsylvania Legislature to enact a statute to ameliorate the practical problems for police that *Whitmyer* engendered. Ultimately, more recent Appellate Court decisions have tended to interpret *Whitmyer* narrowly.

According to the Westlaw search engine, eighty-four (84) Appellate cases have cited *Whitmyer* since 1995. Not all of these cases involved a traffic stop for speeding. However, several did. Without promising to be comprehensive, we will endeavor to highlight the key cases decided since *Whitmyer* where a Defendant challenged a traffic stop based upon an officer's opinion regarding the speed of a motor vehicle:

(1) *Commonwealth v. Butler*, 856 A.2d 131 (Pa. Super. 2004)

In *Butler*, Philadelphia police officers observed the Defendant's vehicle traveling at 50 to 60 miles per hour in a posted 25 mile per hour zone. The Defendant also weaved in and out of traffic and even traversed onto the concrete median.

7

Citing the fact that the Defendant was driving down a populated street in a city, the Superior Court stated that police had "more than sufficient probable cause that Butler had violated the Vehicle Code. The initial stop was therefore justified." **Id** at page 135.[3]

(2) ***Commonwealth v. Fredericks***, 2015 WL 7722041 (Pa. Super. 2015)[4]

In this case, a police trooper utilized a radar gun to measure the speed of Defendant's vehicle at 82 miles per hour in a 65 mile per hour zone. The officer decided to afford the Defendant with "a break" by not citing him for speeding. Because the Defendant was not charged with speeding, the trooper did not verify the certificate of accuracy for his radar gun. Because of this, the Defendant argued that his traffic stop should be suppressed. The Superior Court disagreed and stated:

> "We hold Trooper Zaykowski had probable cause to stop Appellant for speeding, even though the Commonwealth could not produce at trial documentation showing that the radar gun used was an approved, properly calibrated speed-testing device. Trooper Zaykowski did not need to have sufficient evidence to convict Appellant of speeding when he stopped him. Rather, he needed only probable cause. He met that standard here. His radar gun timed Appellant's speed at 82 mph in a 65 mph zone – almost

---

[3] Interestingly, some of the evidence used by the police to determine probable cause occurred after the police officer had activated her lights and sirens. Thus, post-activation driving was deemed to be relevant to the issue of probable cause.

[4] Fredericks is a Memorandum Opinion. It is therefore not binding precedent. We cite it only as persuasive authority.

8

20 mph over the speed limit. True, the Commonwealth lacked documentation showing the radar gun's accuracy, because Trooper Zaykowski did not record which unit he used. Such documentation, however, is not necessary to establish probable cause.'...Importantly, the actual accuracy of the radar gun is the wrong inquiry in determining probable cause. Rather, the proper inquiry is whether Trooper Zaykowski reasonably believed it was accurate.' The suppression inquiry is analyzed from the perspective of the officer, and there is no requirement that an actual Vehicle Code Violation be established, only that there be a reasonable basis for the officer's action in stopping the vehicle." *Commonwealth v. Vincett*, 806 A.2d 31, 33 (Pa. Super. 2002)."

(3) *Commonwealth v. Heberling*, 6787 A.2d 794 (Pa. Super. 1996)

Police observed a vehicle traveling "at an extreme rate of speed" in a 45 mile per hour zone while he was one-tenth of a mile from an intersection and two- to three-tenths of a mile in front of the crest of a hill. The Defendant was stopped before reaching either of these points. Weather conditions were clear. No other traffic was affected, nor were any pedestrians put at risk. Under these circumstances – which are very close to the ones at bar – the Superior Court affirmed the traffic stop and stated:

"There is no question that speeding alone does not constitute a violation of this statute (driving at an unsafe speed). There must be proof of speed that is unreasonable or imprudent under the circumstances (of which there must also be proof), which are the "conditions" and "actual and potential hazards then existing" of the roadway. These circumstances may include not only the amount of traffic, pedestrian travel and weather conditions, but also the nature of the roadway itself (e.g., whether 4-lane interstate, or rural; flat and

9

wide, or narrow and winding over hilly terrains; smooth surface or full of potholes; clear or under construction with abrupt lane shifts.) It is circumstances under which one's speed may be found sufficiently unreasonable and imprudent to constitute a violation of § 3361, even if the driver has adhered to the posted speed limit....

Approaching a hillcrest and approaching an intersection are "conditions" specifically enumerated in the statute that require a driver to proceed at a safe and appropriate speed. When Appellant drove at an excessive speed under these conditions, she violated § 3361." **Id** at pages 795-796; 797.

(4) ***Commonwealth v. Judy***, 2016 WL 6820539 (Pa. Super. 2016)[5]

In this case, a Pennsylvania State Police Trooper followed the Defendant's vehicle on US Route 30 for a quarter of a mile. Using a calibrated speedometer in his police cruiser, the trooper indicated that the Defendant was traveling 60 miles per hour in a 40 mile per hour zone. There were no other vehicles on the roadway. At no time did the vehicle leave its proper lane of travel. The Suppression Court held that the officer's estimate of speed over one-quarter of a mile, did not rise to the level of probable cause necessary to support a traffic stop. Based upon ***Whitmyer***, a panel of the Superior Court affirmed the Trial Court's decision and declared the officer's use of a speedometer to measure the Defendant's speed over a distance

---

[5] Like ***Fredericks***, ***Judy*** was a Memorandum Opinion and is being cited a persuasive, as opposed to binding, precedent.

10

of less than three-tenths of a mile to be insufficient to create probable cause.

(5) **Commonwealth v. Little**, 903 A.2d 1269 (Pa. Super. 2006)

In **Little**, the police observed a Defendant approaching the crest of a hill which obscured vision of an intersection on the other side of the crest. The officer described the Defendant's vehicle as accelerating "to its fullest capability." The officer estimated that the Defendant's vehicle was traveling 40-45 miles per hour in a 35 mile per hour zone. Relying upon **Whitmyer**, the Defendant challenged the traffic stop. The Superior Court rejected the Defendant's challenge and stated that the officer's testimony was sufficient to establish reasonable grounds for the belief that the Defendant violated the Motor Vehicle Code.

(6) **Commonwealth v. Minnich**, 874 A.2d 1244 (Pa. Super. 2005)

The police officer in **Minnich** observed the Defendant drive around a curve and over a hill "at a very high rate of speed" on an icy roadway. Emphasizing that the Defendant was not only speeding, but was also proceeding around a blind curve, the Superior Court concluded:

> "The question remains, then, whether the act of speeding, at the approach to an intersection, when the speed is

11

estimated by the observing officer, with no other traffic in the area, when the officer observes "a lot of dust and cinders" blowing up from the icy roadway as the vehicle comes around a sharp curve as it crests a hill, establishes a violation of the Driving-Vehicle-at-Safe-Speed statute. We have carefully reviewed the record and conclude that the Suppression Court's factual findings of the surrounding circumstances are sufficient for the trier of fact to have concluded beyond a reasonable doubt that Appellant was operating his vehicle at an unsafe speed. Accordingly, we conclude that the stop of Appellant's vehicle was lawful..." **Id** at page 1238.

(7) **Commonwealth v. Parrish**, 2016 WL4849251 (Pa. Super. 2016)[6]

In **Parrish**, a police officer was parked along a roadway with a 35 mile per hour speed limit. The officer observed a vehicle traveling "at a high rate of speed". Based upon his experience, the officer estimated that the vehicle was traveling about 65 miles per hour. In affirming the validity of the traffic stop, the Superior court chastised the Defendant for conflating probable cause with proof beyond a reasonable doubt. The Court stated:

> "Establishing approved speed timing methods, § 3368 only speaks to the evidence necessary for a conviction. Appellant would have us replace the current probabilistic standard required for traffic stops with one hitherto confined to formal adjudicatory proceedings. Adopting such a position would graft an impossible burden into the law: The need to have enough evidence before a conviction before pulling a vehicle over.... In this case,

---

[6] **Parrish** is also a Memorandum Opinion. It is not therefore binding precedent. We cite it only as persuasive authority.

12

> Officer Carpenter was patrolling a stretch of highway with which he was well familiar. Carpenter knew the posted speed limit and the usual pace of traffic along Hellam Street. After observing Appellant's vehicle, Carpenter's experience with traffic enforcement enabled his to estimate Appellant's speed as being nearly doubled the posted speed limit."

Based upon this reasoning, the Court determined that the officer's estimate of the Defendant's speed was sufficient to create probable cause.

(8) *Commonwealth v. Perry*, 982 A.2d 1009 (Pa. Super. 2009)

*Perry* was a case emanating from Lebanon County where this jurist denied a Defendant's Suppression Motion. In *Perry*, an Annville Township Police Officer observed a vehicle stopped at the intersection of US Route 422 and Route 934. When the light turned to green, the vehicle "took off at a high rate of speed". To investigate, the officer had to speed his cruiser to 40 miles per hour in a 25 mile per hour zone. The Defendant challenged the subsequent traffic stopped based upon *Whitmyer*. The Superior Court rejected this challenge and stated:

> "Instantly, Appellant drove 15 miles per hour faster than the posted speed limit of 25 miles per hour on a road that was wet and slushy. Because *Minnich* established that potential danger is sufficient to satisfy the probable cause standard, we discern no legal error in concluding that the instant facts are sufficient to meet the lower standard of reasonable suspicion...In conclusion, we hold that *Minnich*, which established that speeding may create sufficient potential for causing an accident under certain

13

circumstances to warrant a finding of probable cause, also applies to the current standard of reasonable suspicion. Accordingly, the Suppression Court did not err in concluding Officer Robinson had reasonable suspicion to stop Appellant." **Id** at page 1012-1013.

(9) *Commonwealth v. Ulman*, 902 A.2d 514 (Pa. Super. 2006)

Police officers were stopped along Route 30 in York at approximately 2am when they observed a Defendant traveling at a "high rate of speed". The officers estimated that the speed was approximately 60-65 miles per hour in a 35 mile per hour zone. The Superior Court rejected the Defendant's Suppression Motion, stating that the officer "was entitled to draw reasonable inferences from the facts in light of his twelve years of experience. Based on this experience and the facts as he perceived them, [the officer] reasonable concluded that violations of the Motor Vehicle Code were being committed." **Id** at page 518.

(10) *Commonwealth v. Wilbert*, 858 A.2d 1247 (Pa. Super. 2004)

In this case, a police officer witnessed the Defendant traveling from the opposite direction and traveling toward her cruiser at a speed of roughly 60 miles per hour in a 45 mile per hour zone. The officer also noticed a nauseating odor coming from the vehicle. She therefore turned around and began following the vehicle. During this period of time, the Defendant crossed the center line and the fog line of the roadway on

14

numerous occasions.    Citing **Whitmyer**, the Defendant challenged the viability of the traffic stop.  The Superior Court rejected the challenge.  Based upon a totality of information presented, the Court held that the traffic stop was appropriate.

As is evident from the decisional precedent outlined above, every case involving an officer's estimate of speed is different.  Each must be evaluated based upon the unique factual circumstances apparent to the police officer when he effectuated the traffic stop.  In this case, Officer Firestone was aware of the following:

- That it was 2 a.m. and that traffic on US Route 322 was light;

- That US Route 322 is one of the most heavily traveled roadways in Lebanon County.  Even at 2 a.m., vehicles could be expected to travel on Route 322.

- That the posted speed limit at Route 322 where Officer Firestone was parked was 45 miles per hour;

- That Officer Firestone perceived that the DEFENDANT's vehicle was traveling significantly in excess of the posted speed limit as it passed the officer's location;

- That the intersection of Route 322 and Route 117 is located approximately one-quarter of a mile to the west of where Officer Firestone was located.  The DEFENDANT's vehicle was traveling toward this intersection.

15

- That the town of Campbelltown is located immediately on the other side of the intersection of Route 322 and Route 117. This town is comprised of closely-spaced residences, churches and businesses. The speed limit in Campbelltown is lower than the speed limit where the officer first observed the DEFENDANT's vehicle.[7]

- That a residential housing development is situated to the north of the intersection of Route 117 and Route 322 on Route 117.[7]

- That any motorist traveling at the speed observed of the DEFENDANT's vehicle would create a traffic hazard at the intersection of Route 322 and Route 117, or traveling along either Route 322 or Route 117 on the other side of the intersection.

- When Officer Firestone pulled onto Route 322 in order to follow the DEFENDANT's vehicle, he had to accelerate quickly to reach 60 miles per hour and did not appreciably catch up to the DEFENDANT.

- Based upon his experience, Officer Firestone estimated the DEFENDANT was speeding at least 15 miles per hour in excess of the posted speed limit.

It is the opinion of this Court that Officer Firestone had probable cause to effectuate a traffic stop of the DEFENDANT's vehicle. While only one or two factors outlined above may not establish probable cause, the

---

[7] We do not recall specific testimony at the Suppression Hearing regarding the existence of Campbelltown and the layout of the roadways at or near the intersection of Route 322 and Route 117. However, we know that the intersection is located in Officer Firestone's jurisdiction and he is familiar with the area. This Court is also familiar with the area and we have taken judicial notice of the configuration of the roadways and surrounding buildings.

16

totality of all of the above clearly establishes that Officer Firestone was justified in stopping the DEFENDANT.

### (b) Improper Right-Hand Turn

We accept as self-evident that Officer Firestone could conduct a traffic stop of any motorist who performed a right-hand turn similar to the one the DEFENDANT attempted from US Route 322 onto Route 117. Whenever a motorist tries to accomplish a turn at an excessive rate of speed and drifts into the oncoming lane of travel as a result, that motorist has violated Pennsylvania's Motor Vehicle Code. Section 3331 of the Code states that "The driver of a vehicle intending to turn right shall approach the turn and make the turn as close as practicable to the right-hand curb or edge of the roadway." 75 Pa.C.S.A. § 3331. Clearly, the DEFENDANT's turn from Route 322 onto Route 117 did not comport with this standard.

The problem in this case is that Officer Firestone had already engaged his lights and siren when he observed the DEFENDANT's improper turn. The DEFENDANT now claims that his improper turn is immaterial to the question of whether police could effectuate a lawful traffic stop. The DEFENDANT argues that anything he did after Officer Firestone engaged his lights and siren is irrelevant to the lawfulness of the ultimate traffic stop.

It is true that a traffic stop officially "occurs" when a police officer activates lights and siren. *Commonwealth v. Livingstone*, 174 A.3d 609 (Pa. 2017). However, this precept does not automatically lead to the

17

conclusion that everything that occurs thereafter should be deemed irrelevant. To the contrary, police cannot and should not ignore the Defendant's driving violations after lights and siren are activated. In the opinion of this Court, unsafe driving is unsafe, regardless of whether it occurs before or after a police officer engages his lights and siren.

In *Commonwealth v. Scattone*, 672 A.2d 345 (Pa. Super. 1996), a police officer engaged his lights and siren to stop a vehicle based upon information he received from a witness. After the lights and siren were activated, the Defendant led police on a three (3) mile chase and committed numerous traffic violations in the process. The Defendant defended against his violations by claiming that police did not have probable cause to effectuate an initial stop. He attempted to characterize probable cause as a "condition precedent to validating police pursuit and a citizen's violating of § 3733(a) for fleeing and attempting to allude police." **Id** at page 346. Pennsylvania's Superior Court rejected the Defendant's position. The Superior Court noted that citizens are not permitted to raise unlawfulness of the arrest as a defense to a resisting arrest charge. In part because of this, the Court concluded "A citizen is not permitted to avoid a violation of §3733(a) under the cloak of a no probable cause or articulable suspicion to believe criminal activity is afoot by police."

In the opinion of this Court, the DEFENDANT's improper right turn onto Route 117 provided separate and independent justification for Officer Firestone's traffic stop. The mere fact that the improper right turn occurred

18

after Officer Firestone had engaged his lights and siren does not afford the DEFENDANT with a defense to a charge of violating the Motor Vehicle Code, nor does it erase the existence of probable cause based upon Officer Firestone's observation of the improper turn. For this reason also, we believe that Officer Firestone's traffic stop of the DEFENDANT was proper.

## III. CONCLUSION

There is absolutely no evidence whatsoever that race played a role in Officer Firestone's traffic stop of the DEFENDANT.[8] However, Officer Firestone did immediately perceive that the DEFENDANT's vehicle was traveling too fast and his perception was confirmed when he could not catch the DEFENDANT's vehicle despite accelerating in own to 60 miles per hour. If the DEFENDANT's speeding were not enough, Officer Firestone then observed the DEFENDANT make a dangerous right-hand turn that would have caused an accident had another vehicle been located on Route 117. All of the above justified Officer Firestone's traffic stop. Therefore, the events that occurred thereafter should not be suppressed. An Order to effectuate these decisions will be entered today's date.

---

[8] Indeed, given that the DEFENDANT's vehicle traveled past Officer Firestone's position in the middle of the night at an area of the highway that was unlit and at a high rate of speed, we conclude that it was unlikely that Officer Firestone even realized the race of the driver of the speeding vehicle.

19